Affirmed by published opinion. Judge DUNCAN wrote the majority opinion, in which Judge KEENAN joined. Judge KEENAN wrote a separate concurring opinion. Judge KING wrote a dissenting opinion.
OPINION
DUNCAN, Circuit Judge:
Jane Doe brought a challenge to Va. Code sections 9.1-900 et seq. and 18.2-370.5, which, together, classify her as a sexually violent offender and prevent her from entering the grounds of a school or daycare without first gaining permission from a Virginia circuit court and the school board or the owner of the daycare. She also challenged the policy of the Spotsylva-nia County School Board (the “Board”), which she alleges does not allow her to petition anonymously for entry onto school property. The district court dismissed all but one of her claims on the grounds that they were unripe and that she lacked standing. It determined that her remaining claim failed to allege grounds upon which relief could be granted, and dismissed it under Federal Rule of Civil Procedure 12(b)(6).
Doe’s complaint includes four counts: she alleges that the defendants have violated her substantive due process, procedural due process, associational, and free exercise rights. The injuries she alleges with respect to the first, third, and fourth of these counts stem from impediments the Virginia statute and the Board policy place on her ability to access school and church property. However, because she has not yet attempted to undertake the requisite steps to access these properties, she cannot demonstrate that these claims are jus-ticiable at this juncture. One component of her second count, her challenge to the law stemming from an alleged denial of procedural due process, on the other hand, is justiciable. However, she fails to state a procedural due process claim upon which relief may be granted. Accordingly, we *751 affirm the district court’s dismissal of her claims.
I.
A.
Doe was convicted in 1993 of carnal knowledge of a minor without the use of force in violation of Va.Code section 18.2-63. Under Virginia law, she was required to register on the Virginia Sex Offender and Crimes Against Minors Registry (the “Registry”), Va.Code section 9.1-902 (formerly Va.Code section 19.2-298.1), but she would have been able, after a period of time, to petition a Virginia circuit court to have her name removed from the Registry, Va.Code section 9.1-910. However, a 2008 amendment reclassified Doe’s crime as a “sexually violent offense,” 2008 Va. Acts 877; see Va.Code section 9.1-902(E)(1), and because Virginia law does not provide an avenue for sexually violent offenders to petition for removal from the Registry, Doe must now remain on the Registry for life, Va.Code section 9.1-910(A).
As an individual classified as a sexually violent offender, Doe is required to register with the Virginia Department of State Police (the “Department”), which publishes sex offenders’ names, photographs, and certain other personal information on a website accessible to anyone browsing the internet. This information is indexed by the zip codes in which the offenders work and live. In addition, and of more consequence in this case, the law prohibits Doe, as a sexually violent offender, from “entering or being present, during school hours, and during school-related or school-sponsored activities upon any property [s]he knows or has reason to know is a public or private elementary or secondary school or child day center property.” Va.Code section 18.2-370.5(A). She may, however, gain access through a successful petition to both (1) a circuit court and (2) a school board or owner of a private daycare. Va. Code section 18.2-370.5(B).
Doe lives in Spotsylvania County, Virginia with her husband, eleven-year-old stepson, and two children, who are nearing school age. Unless she gains permission from a Virginia circuit court and the Board, she is not able to meet with her stepson’s teachers at school, attend his school functions, or drop him off at or pick him up from school. She contends that these restrictions will require her to hom-eschool her younger children. According to Doe, the Board provides her with no procedure whereby she may request permission for entry onto school property without revealing her identity and her classification as a violent sex offender. As a result, she claims, any petition she would make to the Board would expose her as a sexually violent offender to members of the school community, which would have dire social consequences for her children. Significantly, Doe may apply under an anonymous pseudonym to the circuit court. See Va.Code section 8.01-15.1. She acknowledges that “[ajpplication to the courts is not at issue.” Appellant’s Br. at 19 n.4. Doe also claims that all the local churches of her faith have Sunday schools, so the prohibition from entering daycare property prevents her from going to church.
It is undisputed that Doe has not attempted to gain permission for entry either from a Virginia circuit court, the Board, or any church or church Sunday school.
B.
Rather than petition any of these entities, Doe brought a complaint under 42 U.S.C. § 1983 against, inter alia, Colonel W. Steven Flaherty, in his official capacity as Superintendent of the Department, and *752 the Board.[1] She alleged violations of her substantive due process, procedural due process, associational, and free exercise rights. Doe claimed that, by maintaining the Registry with her name and information on it and by failing to provide her with a means of petitioning anonymously for access to school grounds, the defendants infringed upon her fundamental right to raise and educate her children. See Pierce v. Soc’y of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). She also argued that Flaherty violated her right to procedural due process under the Fourteenth Amendment by reclassifying her and by publicizing her status as a sexually violent offender on the Registry without affording her a procedure through which to challenge this action, thereby preventing her from entering school and day center property, and that the Board violated her right to procedural due process by failing to provide her with a procedure by which she may anonymously petition to enter school property. Doe’s third claim was that the defendants violated her right under the First and Fourteenth Amendments to associate with members of the school community. Finally, Doe argued that Flaherty violated her right under the First and Fourteenth Amendments to the free exercise of religion, because she is prohibited from entering churches of her faith in her area, all of which have Sunday schools.
She asked the district court to declare unconstitutional Va.Code section 18.2-370.5 governing access to schools and the petition process, the 2008 reclassification, and the Board policy; to order the Board to implement a procedure by which she could anonymously petition to enter and remain on school property; to enjoin the Board from exercising its authority to prevent her from entering school property; to enjoin Flaherty from enforcing Va.Code section 9.1-900 et seq., classifying her as a violent sex offender, and collecting, maintaining, and making publicly available her information in the Registry; and to order Flaherty to provide her with a procedure to prove that she is not a dangerous person and, therefore, should not be classified as a sexually violent offender.[2]
The district court dismissed all but one of Doe’s claims because they were unripe and because Doe lacked standing. It found that her claim against Flaherty challenging her placement on the Registry met the tests for both ripeness and standing, but ultimately dismissed it under Federal Rule of Civil Procedure 12(b)(6).[3]
II.
A.
We review the district court’s dismissal of Doe’s claims de novo. See Miller v. Brown, 462 F.3d 312, 316 (4th Cir.2006) (de novo review of dismissal for lack of ripeness or standing); Goldstein v. Moatz, 364 F.3d 205, 211 (4th Cir.2004) (de novo review of dismissal for failure to state a claim under Rule 12(b)(6)). In reviewing the district court’s dismissal, we must accept all properly pled factual allegations in the complaint as true and construe all facts in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraf *753 fairs.com, Inc., 591 F.3d 250, 253 (4th Cir.2009).
B.
There exist two strands of standing: Article III standing, which ensures that a suit presents a case or controversy as required by the Constitution, and “prudential standing,” which encompasses “judicially self-imposed limits on the exercise of federal jurisdiction.” Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).
To have Article III standing, Doe must be able to show that (1) she suffered an actual or threatened injury that is concrete, particularized, and not conjectural; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable decision. Miller, 462 F.3d at 316 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). “The party invoking federal jurisdiction bears the burden of establishing these elements.” Lujan, 504 U.S. at 561, 112 S.Ct. 2130. With the exception of her procedural due process claim against Flaherty, Doe’s claims do not satisfy any of these three prongs.
Federal courts also face judicially imposed prudential limits on their jurisdiction “founded in concern about the proper — and properly limited — role of the courts in a democratic society.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing doctrine’s prudential dimensions are not as definite as its constitutional dimensions, but the Supreme Court has explained that “prudential standing encompasses ‘the general prohibition on a litigant’s raising another person’s legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of interests protected by the law invoked.’ ” Elk Grove Unified School Dist. v. New-dow, 542 U.S. 1, 12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting Allen, 468 U.S. at 751, 104 S.Ct. 3315). Because we conclude that Doe is unable to meet the requirements for Article III standing for the bulk of her claims, we need not engage in prudential standing analysis. We do note that while none of the prudential standing limitations appear directly applicable to the current case, the types of concerns underlying them are present.[4]
1.
In this case, federalism concerns and our respect for Virginia’s processes dictate special caution in evaluating the requirement of standing. The principles of federalism and comity counsel in favor of providing at the least an opportunity for the processes provided for by Virginia’s statute to address Doe’s claims before intervening. We have no reason to presume that Virginia circuit courts are anything but competent, reasonable, and fair in making determinations regarding whether and under what conditions individual sex offenders should be allowed onto school or daycare property. Those courts, which handle cases such as Doe’s with relative frequency, are much better equipped than we to make such determinations in the first instance. Furthermore, to prevent cases such as Doe’s from being heard by Virginia state courts would threaten to undermine the consistency with which we presume Virginia courts treat similarly sit *754 uated sex offenders petitioning for access to school or daycare property. It would also deprive us of a developed factual basis on which to assess her claims.[5]
2.
Doe’s claims challenging the constitutionality of Va.Code sections 18.2-370.5 and 9.1-900 et seq. based on alleged violations of her substantive due process, associational, and free exercise rights fail under the first prong of our standing analysis. She does not allege an injury in fact, because the harm she alleges is not “actual or imminent,” but “conjectural [and] hypothetical.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130. When it comes to her claims regarding her substantive due process, associational, and free exercise rights, she does not allege harm merely from being placed on the Registry, but rather from the consequences her categorization entails for her ability to access school and church property. However, as of yet, these consequences do not affect her with finality, as she has not taken any of the steps necessary to access those properties. Because Doe has not attempted to petition a Virginia circuit court, the Board, or any church, it is far from clear whether she will ultimately be barred from entering these properties. Therefore, any injury to her substantive due process, associational, or free exercise rights she would suffer from not being able to enter a school or a church remains hypothetical. See Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 122-23 (4th Cir.2000) (where it was speculative that a referendum would be called, plaintiff was not injured by provisions allowing for it).
Doe’s substantive due process claim against the Board suffers from a lack of specificity and concreteness that makes it unsuitable for determination by this court. While, in considering a motion to dismiss, we accept properly pled factual allegations as true and construe them in the light most favorable to the plaintiff, “wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss.” Catholic League for Religious and Civil Rights v. City and County of San Francisco, 624 F.3d 1043, 1080 (9th Cir.2010) (quoting Mann v. City of Tucson, 782 F.2d 790, 793 (9th Cir.1986) (per curiam)). We do not have an obligation to make Doe’s complaint for her.
From a reading of Doe’s complaint, it appears that the injury she alleges arises from an outright denial of her ability to enter school property. In her brief to this court and at oral argument, however, the gravamen of this claim took on a more nuanced character—she alleged inju *755 ry arising from the lack of a policy by which she could petition for entry to the school anonymously, which she claimed would reveal her to be a sexually violent offender and cause her children to be subject to ridicule at school. With such a shifting characterization of her injury, “there can be no confidence of ‘a real need to exercise the power of judicial review’ or that relief can be framed ‘no (broader) than required by the precise facts to which the court’s ruling would be applied.’ ” Warth, 422 U.S. at 508, 95 S.Ct. 2197 (quoting Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 221-222, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). As pled, her alleged substantive due process injury at the hands of the Board is thus insufficiently concrete to be addressed by this court.
Doe’s procedural due process claim against Flaherty, on the other hand, alleges an injury in fact. Doe asserts that Flaherty violated her right to procedural due process under the Fourteenth Amendment by reclassifying her as a sexually violent offender and making her reclassification publicly available in the Registry without affording her a procedure by which to challenge these actions. Unlike other consequences of the law, which have not yet taken effect with finality, Doe has been reclassified as a sexually violent offender and placed on the Registry already. She has no mechanism internal to the Virginia statutory scheme by which to challenge this reclassification. Her alleged injury to her right to procedural due process is thus in no way hypothetical, and it is sufficiently concrete for a federal court to address it.
3.
The second and third prongs of our standing inquiry require us to determine whether Doe’s alleged injuries are fairly traceable to a defendant’s conduct, and whether a favorable decision would be likely to redress these injuries.[6] Traceability is established if it is “likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court.” Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir.2000) (citing Lujan, 504 U.S. at 561, 112 S.Ct. 2130). An injury is re-dressable if it is “likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Still, “no explicit guarantee of redress to a plaintiff is required to demonstrate a plaintiffs standing.” Equity in Athletics, Inc. v. Dep’t of Educ., 639 F.3d 91, 100 (4th Cir.2011).
The traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured. “An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court’s control.” Mirant Potomac River, LLC v. EPA 577 F.3d 223, 226 (4th Cir.2009) (citing Krasner, 401 F.3d 230 at 234-35); see Lujan, 504 U.S. at 568-71, 112 S.Ct. 2130 (plurality opinion) (no redressability where other federal agencies not bound by the Secretary of the Interior’s regulations would have to act in order for the plaintiffs’ *756 alleged injury to be remedied); Allen, 468 U.S. at 758-59, 104 S.Ct. 3315 (conclusion that withdrawal of tax exemptions would lead to a school changing its policies was “entirely speculative,” making “[tjhe links in the chain of causation between the challenged Government conduct and the asserted injury ... far too weak for the chain as a whole to sustain [plaintiffs’] standing”); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (injury to plaintiffs must “be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court”).
A plaintiff faces a related obstacle to establishing traceability and redressability when there exists an unchallenged, independent rule, policy, or decision that would prevent relief even if the court were to render a favorable decision. For example, we have held that where the free speech rights of a fraternity’s members may have been infringed when they were punished for singing and marching in front of a university library, because other “adequate and independent” grounds for the sanctions existed, the fraternity’s claim was “not redressable because a ruling on that claim would not alter that conclusion.” Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 148-49 (4th Cir.2009) (citation omitted). Similarly, where an unchallenged regulation would prevent a plaintiff from installing a billboard even if we struck down the challenged regulation, we have found redressa-bility lacking. Covenant Media of S. C., LLC v. City Of N. Charleston, 493 F.3d 421, 430 (4th Cir.2007).
Doe’s challenges to the Virginia statute based on Flaherty’s alleged violations of her substantive due process, associational, and free exercise rights fail under the final two prongs of our standing analysis. Because the harm that forms the basis for these counts arises from her inability to access school or church property, and because the statute allows for third parties to grant her permission to enter these properties, she cannot demonstrate traceability or redressability. As Doe has not yet tried to petition a Virginia circuit court, the Board, or any church, we have no way of knowing whether she will ultimately be unable to enter her children’s school or a church of her faith, and it is purely speculative whether action by this court would have any effect on her ability to enter school or church property.[7] She has thus failed to establish either traceability or redressability with respect to the law’s impact on her substantive due process right to raise and educate her children, her right to associate with members of the school community, and her right to the free exercise of religion.
Doe’s claims against the Board also fail under the traceability and redress-ability prongs of our standing inquiry. Doe alleges that she is injured by not being able to enter school grounds without *757 going through a process that would reveal her status as a “sexually violent offender,” arguing that she “ought to be allowed to proceed under a pseudonym with the School Board so as not to subject her small children to ridicule, debasement, and embarrassment, which they would suffer, if labeled the children of a sex offender by their peers and in the school community.” Appellant’s Br. at 21. Alternatively, one may read her complaint as alleging that she is harmed by not being able to enter the school at all — that the Board violated her substantive due process right by exercising its “authority to decide whether a registrant classified as a sexually violent offender ... may enter school property and under what conditions,” J.A. 15, and by banning her “from school grounds, parent-teacher conferences, dropping off or picking up her children from school, and school-sponsored activities.” Appellant’s Br. at 20. She also alleges that the Board’s policy violates her right to procedural due process and that being banned from school property violates her right to associate with members of the school community. Even if we were to order the Board to implement a procedure by which she could anonymously petition to enter and remain on school property, or to require it to admit her without any petition at all, Doe would still need permission from a Virginia circuit court. We have no way of knowing, and Doe is obviously unable to assert, how that court would respond to such a petition; nor have we any control over its decision. Moreover, Doe does not challenge the requirement that she obtain permission from the Virginia court. The circumstances here are thus in line with our precedent declining to find redressability where an additional, unchallenged rule could prevent a plaintiff from having her injury cured. It therefore remains purely speculative whether any action by this court with respect to the Board’s policy would redress Doe’s alleged injury of not being able to obtain entry into school property, or of not being able to do so with anonymity.[8]
With respect to her procedural due process claim against Flaherty, on the other hand, Doe is able to demonstrate traceability and redressability. She alleges an injury to her right to adequate process to challenge her reclassification and the publication of her status as a sexually violent offender on the Registry. This injury is directly traceable to Va.Code sections 9.1-900 et seq., which Flaherty has implemented. Where the injury complained of is the reclassification itself, Doe meets the requirements of traceability and redressability, because she has already been reclassified and is afforded no procedure by which to challenge her reclassification.[9] If we were to agree with Doe and *758 hold that the law is unconstitutional, the alleged injury to her procedural due process right would be removed.
C.
Along with lacking traceability and redressability, and for similar reasons, the majority of Doe’s claims are not ripe for judicial determination. A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact “remains wholly speculative.” Gasner v. Bd. of Supervisors, 103 F.3d 351, 361 (4th Cir.1996). In determining ripeness, “we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration. A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties.” Miller, 462 F.3d at 319 (citations and internal quotation marks omitted). Like the re-dressability requirement for standing, ripeness doctrine prevents us from considering a controversy until it is presented in “clean-cut and concrete form.” Rescue Army v. Mun. Ct. of Los Angeles, 331 U.S. 549, 584, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947).[10] As with standing, the party bringing the suit bears the burden of proving ripeness. See Miller, 462 F.3d at 319.
Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court. See Franks v. Ross, 313 F.3d 184, 195 (4th Cir.2002) (where county and state agency had “interwoven involvement” in a permitting process, controversy was not ripe until the completion of the final step of the process); Charter Fed. Sav. Bank v. Office of Thrift Supervision, 976 F.2d 203, 208-09 (4th Cir.1992) (where an agency was required to make multiple decisions and take several actions before an injury could occur, the issues at hand were not ripe for judicial decision). Because Doe has yet to petition a Virginia circuit court for permission to enter school or church property, all of her constitutional claims *759 except that arising from Flaherty’s alleged violation of her right to procedural due process are dependent on future uncertainties and thus not ripe for judicial decision.
The hardship prong of our ripeness analysis is “measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement of the challenged law.” Charter Fed. Sav. Bank, 976 F.2d at 208-09. In considering the hardship to be balanced against the fitness of the issues for review, we may consider the cost to the plaintiff of delaying review. Miller, 462 F.3d at 319. While the Virginia law itself is harsh on Doe, requiring her to wait to bring this case to federal court until after she has sought permission from a Virginia circuit court will not cause her undue hardship.[11]
In concluding that the majority of Doe’s claims are not ripe for decision, we note the limited nature of our determination: it would appear that were Doe to petition a Virginia circuit court, the traceability, re-dressability, and ripeness concerns we have noted here would be addressed.[12]
Doe’s procedural due process claim against Flaherty, on the other hand, is ripe. Because she has already been reclassified as a sexually violent offender and this reclassification has been publicized on the Registry, and because Doe currently lacks any means internal to Virginia’s statutory scheme to challenge her reclassification, the injury she alleges has already occurred and is not merely speculative.
D.
The only claim for which Doe can demonstrate standing and ripeness is her procedural due process claim against Flaherty. That claim, however, cannot withstand Flaherty’s motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).
Doe argues that her reclassification and the publication of her status as a sexually violent offender on the Registry without an opportunity to challenge these actions violates her right to due process. The Supreme Court foreclosed this argument in Conn. Dep’t of Pub. Safety v. Doe, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003). In that case, a sex offender made essentially the same argument that Doe now makes: that inclusion in an online registry without a hearing violated his right to due process. The Supreme Court held that “even if [the sex offender] could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of all sex offenders—currently dangerous or not—must be publicly disclosed.... [A]ny hearing on current dangerousness is a bootless exercise.” Id. at 7-9, 123 S.Ct. 1160.[13] Be *760 cause Conn. Dep’t of Pub. Safety controls in this case, we must conclude that Doe’s allegation that Flaherty violated her right to procedural due process fails to allege grounds upon which relief could be granted.
III.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

. The other parties named in Doe's original complaint are no longer involved in the litigation.

. For clarity, this list only includes the defendants that are still involved in the litigation.

. Alternatively, it concluded that it must dismiss all of Doe’s claims under Federal Rule of Civil Procedure 12(b)(6).

. It should also be noted that some courts have dismissed indirect injuries under a theory of prudential rather than constitutional standing. See Frank Krasner Enters., Ltd. v. Montgomery County, 401 F.3d 230, 236 n. 7 (4th Cir.2005).

. Indeed, far from abandoning our judicial mandate, we advance here only the unremarkable proposition that a plaintiff avail herself of state remedies at her disposal, and be in a position to benefit from the specific relief she seeks, before coming into district court. Our insistence that Doe seek permission from state entities prior to bringing suit in federal court does not amount to requiring exhaustion of state remedies for her constitutional claims. Rather, we are required to wait until Doe obtains a decision from the Virginia authorities in order to contend with an injury—if it still exists after Doe petitions those entities—that affects her with finality. See Williamson Cnty. Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ("While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. Patsy [v. Bd. of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982),] concerned the latter, not the former.”).

. We discuss the traceability and redressability prongs of the standing analysis jointly, because "they rise or fall together in this case.” Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 323 n. 1 (4th Cir.2002).

. It should be noted that where a plaintiff "seek[s] immediate relief from a federal court as a necessary antecedent to the ultimate relief he seeks from a different entity, like an administrative agency,” that plaintiff can meet the redressability prong by "demons-trat[ing] that a favorable decision from the federal court likely would provide him immediate relief, but need not demonstrate that it likely would provide him the ultimate, discretionary relief sought from the agency.” Townes v. Jarvis, 577 F.3d 543, 547-548 (citing Fed. Election Comm’n v. Akins, 524 U.S. 11, 25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)). Here, although Doe must obtain permission from both the Virginia circuit court and the Board, obtaining permission from the Board is not a "necessary antecedent” to obtaining permission from the court; the statute does not specify any particular order in which a petitioner must proceed. See Va.Code section 18.2-370.5(B).

. We note that if Doe were to successfully petition the Virginia circuit court, she would be able to demonstrate traceability and re-dressability with respect to her claim that the Board's policy against anonymous petitions to enter school grounds infringes her right to raise and educate her children. If, on the other hand, her petition to that court were unsuccessful, the adjudication would leave us with a set of facts that more adequately crystallizes the issue for federal judicial review. Cf. Nuclear Energy Inst., Inc. v. EPA, 373 F.3d 1251, 1313 (D.C.Cir.2004) ("In examining the fitness of an issue for our consideration, we are primarily concerned with whether ... the court and the agency would instead benefit from postponing review until the agency's policy has 'crystallized' through implementation in a concrete factual setting.”). Neither has occurred, and the injury is not sufficiently final for our review.

. In contrast, a plaintiff cannot establish standing when the alleged injury stems originally from the law complained of but its effect is mediated by a third party, see Krasner, 401 F.3d at 234-35, or where we are uncertain whether the injury would be removed were we to rule in the plaintiff's favor, see Iota Xi, 566 F.3d at 148-49. Although we find that *758 Doe’s alleged procedural due process injury is engendered by the challenged law directly, we cannot agree with the dissent that the alleged injury to her substantive due process right to raise and educate her children is linked to the law or to the Board's' policy in a similarly proximate manner. In coming to the conclusion that the alleged substantive due process injury is directly linked to the challenged law, the dissent's analysis conflates Doe's procedural due process and substantive due process arguments. While the procedural injury of classification without redress is directly traceable to the Virginia statute, the intermediate roles that the state's regulatory scheme for dealing with sex offenders lays out for the Board and the Virginia circuit court prevent us from finding traceability or redressability at this stage of Doe’s travails. Having not sought to anonymously petition the Board or requested permission from a Virginia circuit court to enter school property, Doe cannot show that her alleged inability to access her children’s school free of stigma is a result of the Board's policy or, directly, of the Virginia statute. Moreover, were we to declare the Board's procedure — or lack thereof — unconstitutional, Doe would nonetheless have to petition a Virginia circuit court for permission to enter school property. If she were to do so and be denied permission, we would be confronted with an injury traceable to the Board or to officers of the state of Virginia and, as a result, a firmer factual record upon which to base a holding.

. Ripeness analysis holds much in common with standing analysis. See Miller, 462 F.3d at 319 (quoting Erwin Chemerinsky, Federal Jurisdiction § 2.4 (4th ed. 2003) (“Although the phrasing makes the questions of who may sue and when they sue seem distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness.”)). While we discuss ripeness separately from standing, the reasons for which the majority of Doe's claims are not ripe are essentially the same as the reasons for most of her alleged injuries are not redressable.

. This is particularly true when it comes to Doe’s claims stemming from the Board’s policy. Although we recognize the burden inherent in further litigation, the fact remains that even if we were to strike down that policy at this juncture, Doe would have to petition a Virginia court.

. We note that Doe is a sympathetic plaintiff who may be able to obtain a mechanism for anonymous process of appeal to the Board when she is in a position to benefit from it. We expect that if she does not succeed in doing so, we will see her back in federal court in short order.

.Doe attempts to distinguish this case from Conn. Dep't of Pub. Safety, arguing that both the statutory scheme and her claims are distinct. She posits that Virginia’s law, unlike Connecticut's, makes an offender’s dangerousness a material part of the statute, citing the section of the Virginia statute laying out its purpose, which is to protect communities, families and children from sex offenders. See Va.Code § 9.1-900. The cases are not distin *760 guishable on this ground: the Supreme Court recognized that the Connecticut statute was likewise “designed to protect its communities from sex offenders,” Conn. Dep’t of Pub. Safety, 538 U.S. at 4, 123 S.Ct. 1160. As with the Virginia statute, the registry Connecticut's statute provided for was based on "an offender's conviction alone — a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest.” Id. at 7, 123 S.Ct. 1160. Doe further argues that in contrast to the plaintiffs in Conn. Dep’t of Pub. Safety, she alleges not mere harm to reputation, but infringement on her fundamental right to rear her children. Conn. Dep’t of Pub. Safety bars this argument as well. Regardless of the nature of her allegations, Doe has been afforded due process in the form of a trial for her underlying offense. See id. ("[Ejven assuming, arguendo, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute.”).