Jane DOE, Plaintiff–Appellant,

v.

**VIRGINIA DEPARTMENT OF STATE POLICE; W. Steven Flaherty, Colonel, in his official capacity as Superintendent of the Virginia Department of State Police; Spotsylvania County School Board; J. Gilbert Seaux, in his official capacity as the Chairman of the School Board of the Spotsylvania County Schools, Defendants–Appellees.**

No. 11–1841.

United States Court of Appeals, Fourth Circuit.

June 20, 2013.

Marvin David Miller, Esq., Alexandria, VA, for Plaintiff–Appellant.

Charles Antony Quagliato, Office of the Attorney General of Virginia, Richmond, VA, Medford Jennings Brown, IV, Jennifer Lee Parrish, Parrish, Houck & Snead, PLC, Fredericksburg, VA, for Defendants–Appellees.

**ORDER**

Before the Court is the Plaintiff–Appellant's petition for rehearing and rehearing en banc. Judges Duncan and Keenan voted to deny the petition for panel rehearing, which Judge King voted to grant.

A member of the Court requested a poll on the petition for rehearing en banc. Judges Motz, King, Gregory, Davis, and Floyd voted to grant rehearing en banc. Chief Judge Traxler and Judges Wilkinson, Niemeyer, Shedd, Duncan, Agee, Keenan, Wynn, Diaz, and Thacker voted to deny rehearing en banc.

The petition for panel rehearing is denied, and, because the poll failed to garner

the support of a majority of judges in active service, the petition for rehearing en banc is also denied. Judge Duncan wrote an opinion concurring in the denial of rehearing en banc. Judge King wrote an opinion dissenting from the denial of rehearing en banc, in which Judge Floyd joined.

DUNCAN, Circuit Judge, concurring in the denial of rehearing en banc:

I respect the fervor of the dissent's compassion for Ms. Doe. Because, however, of its continued conflation of standing and exhaustion of administrative remedies and misidentification of the basis of the majority opinion, I feel compelled to reiterate the limited issue on which the majority actually ruled and which the dissent largely ignores.

Because the substantive due process injury Ms. Doe alleges arises from her desire to access school property anonymously, a privilege third parties are in a position to grant, her alleged injury is not directly traceable to the challenged law. Furthermore, because she must obtain permission from both the school board and a Virginia court to enter school property, a decision ordering the school board to adopt a policy for her to anonymously petition for entrance would not redress her injury. Indeed, we *did* find Ms. Doe's procedural due process challenge to her classification under the Virginia law to be justiciable, but we determined, based squarely on Supreme Court precedent, that she failed to state a claim upon which relief could be granted.

In the end, it is not this limited ruling, if correctly read, that is at odds with precedent from this and other Circuits: To the contrary, what would indeed break new ground is the dissent's proposal that we o'erleap questions of justiciability to allow registered sex offenders to challenge policies regulating their entry into schools without our knowing whether those policies in fact constrain them.

KING, Circuit Judge, dissenting from the denial of rehearing en banc:

I have previously expressed my disagreement with the views of my good friends in the panel majority, *see Doe v. Va. Dep't of State Police,* 713 F.3d 745, 763–74 (4th Cir.2013) (King, J., dissenting), and it is mostly for the reasons I detailed there that I dissent from the Court's denial of en banc consideration. Nonetheless, I write again to emphasize that the majority's decision sets our court of appeals apart from all others with respect to the authority afforded the federal district courts to hear and consider challenges to state statutes and regulations that may contravene the Constitution.

The majority has identified nothing remarkable about the particular procedures of which it insists Ms. Doe partake prior to filing suit. Indeed, it is largely the mundane nature of the remedies prescribed by the Commonwealth that threatens the upheaval of constitutional litigation there and in its sister states of the Fourth Circuit. There is simply no principled basis to distinguish the roadblocks Ms. Doe now faces from any others that might be erected in another case to defeat federal jurisdiction. Each state within our purview seeking to reduce the costs and expenses of federal litigation can now, by simply enacting a statute or promulgating a regulation, require that any cause of action cognizable pursuant to 42 U.S.C. § 1983 be first presented to a Board of Claims, interposing such myriad levels of administrative and judicial appeals as may be necessary to frustrate and defeat all but the most tenacious of claimants.

Of course, those sorts of maneuvers are strictly forbidden by *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), but that case now holds no sway in our Circuit, and I can only hope that the Supreme Court will grant review to reassert its clear precedent and save us from our own folly. Otherwise, I fear that litigants will suffer serious repercussions. Just recently, for example, we decided *Woollard v. Gallagher,* 712 F.3d 865 (4th Cir.2013), a § 1983 challenge to a Maryland handgun permit restriction alleged to have violated the Second Amendment. One of the plaintiffs was denied a permit, and, although it seems clear that he could have immediately sought federal relief, *see Moore v. City of Asheville,* 396 F.3d 385, 395 n. 4 (4th Cir.2005), he instead chose to pursue an administrative appeal to the state review board. Denied there, the plaintiff elected to forgo proceedings in the state courts in favor of the federal action. Such a choice is now foreclosed in the wake of the majority's decision, which abridges our jurisdiction in a manner unforeseen by Congress and unsanctioned by the Supreme Court. Plainly, that is not how civil rights litigation is supposed to work.

Suppose the General Assembly had passed a different statute—or some agency of the executive had promulgated a regulation—barring access to public school property based on a person's race or gender. Would the majority have insisted that Ms. Doe first plead her case before the school board prior to seeking intervention from the federal courts? Assuming that such a statute or regulation, as applied to Ms. Doe, were *ab initio* repugnant to the Constitution, the Commonwealth ought possess no prerogative to compel her, as a federal jurisdictional predicate, to resort to administrative or judicial remedies devised at the whim of its legislative or executive branches.

Section 1983 and *Patsy* are unquestionably the law of the land, but the opinions authored by the prevailing panel members have made a poor outcome worse by refusing to confront the Supreme Court's binding precedent. Instead, my colleagues in the majority have inaptly analyzed this dispute as one involving constitutional standing, needlessly unsettling that doctrine as well. Ms. Doe's is not a difficult case when properly viewed in the context of exhaustion, but, evidently, easy cases can make bad law too.*

* Judge Duncan insists that "the limited issue on which the majority actually ruled" was "the substantive due process injury Ms. Doe alleges aris[ing] from her desire to access school property anonymously." *Ante* at 213. If the issue of Ms. Doe's preferred anonymity is indeed the only one that the majority decided, then it needs to go back and finish the case. As I explained in detail in my dissent from the panel opinion, Ms. Doe challenged her reclassification as a sexually violent offender under the substantive due process component of the Fourteenth Amendment. *See Doe,* 713 F.3d at 763–64 (King, J., dissenting). The majority flatly acknowledged that to be so: "When it comes to her claims regarding her *substantive due process,* associational, and free exercise rights, she does not allege harm merely from being placed on the

Registry, but rather from *the consequences her categorization entails* for her ability to access school and church property." *See id.* at 754 (emphasis added).

In the face of the majority's offhand, unsupported supposition that Ms. Doe's threshold claim had been abandoned, I demonstrated why it remained very much alive on appeal, *see id.* at 765–66 (King, J., dissenting). I was convinced that my rationale was irrefutable. Evidently it was too much so, in that the majority made not the slightest attempt to refute it. Somewhat ironically, I now stand accused of ignoring the majority's discussion of Ms. Doe's anonymity claim. *See ante* at 213. I am constrained to plead not guilty by reason of irrelevancy, in that the majority had no occasion to decide how Ms. Doe could obtain a variance from the consequences of

That said, my position has not prevailed. So I can only sympathize with future panels of this Court, which will find it all but impossible to distinguish the majority's decision as an outlier. There will come a day—sooner rather than later—when at last we perceive the need to overrule this panel precedent, but that day will have come too late for Ms. Doe and her children.

I would grant rehearing en banc. My good friend and colleague Judge Floyd joins in this dissenting opinion.

her reclassification until it actually addressed and determined whether the initial act of reclassification gave rise to a constitutional claim to begin with. It would certainly make our lives easier as judges if we were free to resolve only the easy issues in a case and disregard the hard ones, but, alas, we cannot do so and remain faithful to our constitutional charge to decide cases and controversies as they are presented to us. Judge Duncan's concurrence does lend some insight as to how future panels may attempt to marginalize this precedent, but to say that Ms. Doe's case is merely about whether and how she may be excepted under state law from the consequences of her reclassification requires one to swallow hard and refuse to accept at face value the facts even as the majority has described them.