**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1235**

RANDY RICHARDSON,

        Plaintiff – Appellant,

v.

PRINCE GEORGE'S COUNTY; ANGELA ALSOBROOKS; MELINDA BOLLING,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge.  (8:22-cv-00487-GJH)

Argued:  December 10, 2025                Decided:  February 3, 2026

Before WILKINSON and WYNN, Circuit Judges, and KEENAN, Senior Circuit Judge.

Vacated and remanded by unpublished opinion.  Senior Judge Keenan wrote the opinion in which Judge Wilkinson and Judge Wynn concur.

**ARGUED:**  Jordan David Howlette, JUSTLY PRUDENT, Washington, D.C., for Appellant.  Roger Cole Thomas, LAW OFFICES OF ROGER C. THOMAS, Greenbelt, Maryland, for Appellee.  **ON BRIEF:**  Rhonda L. Weaver, County Attorney, Shelley L. Johnson, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Largo, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Senior Circuit Judge:

Randy Richardson filed the present lawsuit against Prince George's County, Maryland, based primarily on the actions of the County's Department of Permitting, Inspections, and Enforcement (DPIE). Richardson asserted a claim under 42 U.S.C. § 1983 for denial of equal protection under the Fourteenth Amendment of the U.S. Constitution, alleging that the County treated him and his minority-owned, small business differently from non-minority-owned, large commercial businesses by harassing him, by improperly issuing fines against him, and by preventing him from opening his business.[1] The district court granted the County's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), holding that Richardson failed to establish an injury in fact for purposes of standing under Article III and, alternatively, that he failed to demonstrate that his claim was ripe.

Although the district court correctly observed that Richardson had not been denied a "use and occupancy" permit to operate his business, we nevertheless conclude that Richardson plausibly alleged an injury in fact. Richardson alleged facts indicating that the

---

[1] Richardson also asserted an equal protection claim under Article 24 of the Maryland Declaration of Rights and the Maryland Constitution, which ensures the same equal protection rights protected by the Fourteenth Amendment of the U.S. Constitution. *See Frey v. Comptroller of Treasury*, 29 A.3d 475, 513 (Md. 2011). Richardson asserted this claim against the County as well as Melinda Bolling, in her official capacity as the Director of DPIE, and Angela Alsobrooks, in her former official capacity as the County Executive. Our standing and ripeness analysis in the present case, applied to Richardson's federal claim, applies equally to Richardson's equal protection claim under state law.

Richardson also alleged additional federal and state law claims, but he did not appeal the district court's dismissal of those claims. We therefore do not address them here.

2

County's conduct imposed an unequal barrier to the operation of his minority-owned, small business. Richardson's complaint was based on the allegedly unequal treatment he received during the process of preparing his leased property for occupancy, not on the outcome of a permit application. We further conclude that Richardson's claim was ripe, because the allegations of his complaint adequately demonstrated that any attempt by him to obtain a permit would have been futile. Therefore, we vacate the district court's decision and remand the case for further proceedings.

## I.

We review de novo the district court's order granting a motion for judgment on the pleadings under Rule 12(c), applying the same standard of review that we use to consider a district court's ruling under Federal Rule of Civil Procedure 12(b)(6).[2] *See Affinity Living Corp., LLC v. StarStone Specialty Ins.*, 959 F.3d 634, 639 (4th Cir. 2020); *Short v. Hartman*, 87 F.4th 593, 603 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). Under this standard, "we accept all facts pled in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Short*, 87 F.4th at 603 (internal quotation marks omitted).

With these principles in mind, we state the facts as alleged by Richardson in the complaint. Richardson, who is Black, entered into a lease agreement in January 2020 for

---

[2] We likewise review de novo a district court's rulings on standing and ripeness. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

certain retail space in Iverson Mall located in the County. Richardson planned to open in that space a restaurant and a music venue, "Town Hall Live," and transferred his license to sell liquor to the address of the leased space.

Shortly after entering into the lease agreement, Richardson met with various DPIE employees and learned that Iverson Mall "did not possess the proper permits [from the County] to continue operating at the location." J.A. 13. DPIE employees informed Richardson that "he could apply for the necessary permits [from the County] to open Town Hall Live" but that "DPIE would need to first resolve Iverson Mall's permit deficiencies before the agency could grant him a [use and occupancy] permit." *Id.* DPIE employees told Richardson that Iverson Mall's permit deficiencies would be "resolved in short order." *Id.* A few days later, Richardson "filed an initial non-load bearing wall permit application" for his leased premises. *Id.*

In February 2020, Richardson met with DPIE employees for a second time and was informed that Iverson Mall's permitting issues had not been resolved. When Richardson asked for more information, the DPIE employees responded that they lacked any helpful information. After Richardson stated that there were other businesses currently operating within the mall, the DPIE employees did not have a response. According to Richardson, DPIE had permitted several large businesses in the mall to open, including Burlington and Chipotle.

About one year later, Richardson submitted "a second non-load bearing wall permit application after being told by a DPIE employee that the agency had lost the initial application." J.A. 15. A DPIE employee inspected Richardson's leased property from the

4

exterior and issued a "correction order" that included a $6,500 fine "for lacking electrical, mechanical, [sanitation], and sprinkler permits, and for lacking a fire alarm report." *Id.* Richardson alleged that he had already obtained the required permits, and that a large business that shared the same sprinkler system had not been fined in the same manner. Also, according to Richardson, his leased space previously was used by a church, which operated without proper permits and had not received citations for code violations.

Richardson nevertheless paid $5,500 to DPIE "in an effort to move the permit process along." *Id.* Around that time, Shoppers World opened in a retail space above Richardson's leased property. When Richardson contacted a DPIE employee to ask why Shoppers World had been allowed to open despite Iverson Mall's ongoing permit deficiencies, the DPIE employee was unable to give Richardson an answer.

In March 2021, Melinda Bolling, the Director of DPIE, emailed Richardson to acknowledge "the problems and many challenges" with Iverson Mall. J.A. 16. Bolling asked to schedule a meeting with Richardson to discuss "potential long-term solutions" related to Richardson's leased property. *Id.* There are no additional allegations in the complaint regarding this meeting.

Two months later, in May 2021, a DPIE employee again inspected Richardson's leased property and issued a second "correction order" that included a $1,000 fine for "continuing work." J.A. 17. According to Richardson, the only additional work that had been performed was "plugging [internet] equipment into existing outlets." *Id.*

In September 2021, a DPIE employee conducted another inspection of Richardson's leased property and issued a third correction order that included a fine of $2,000 for

5

allegedly removing the prior correction order and for continuing construction on the property. Richardson asserted that both allegations were false. According to Richardson, other businesses in the mall did not face similar inspection and enforcement actions. In total, Richarson paid more than $9,500 in fines to the County.

The Director of Government Accountability in the County Executive's office contacted Richardson to "apologize" for the enforcement actions by DPIE and to acknowledge a "disconnect" between DPIE and the County Executive. J.A. 18. The Director stated that "DPIE was unnecessarily harassing [Richardson] and that DPIE should not be 'targeting' him or [his] [p]roperty." *Id.* When the Director later asked DPIE to remove the correction orders and the stop work orders posted at the leased property, DPIE complied.

In October 2021, employees from the County Executive's office and DPIE met with Richardson "to resolve whatever 'disconnect' was preventing DPIE from allowing [Richardson] to obtain a [use and occupancy] permit." *Id.* Later that month, the Deputy Chief Administrative Officer for Government Operations for the County (the Deputy Chief) met with Richardson "to discuss the possibility of settling this matter." *Id.* The Deputy Chief informed Richardson that Iverson Mall soon would be sold, and that Richardson should not spend more money on his leased space.

The next month, two employees from the County Executive's office discussed with Richardson "the deficiencies with Iverson Mall's permits that had prevented [Richardson] from seeking a [use and occupancy] permit." J.A. 19. During that discussion, one employee promised to make Richardson "whole for the damages he incurred in connection

6

with DPIE's handling of the permit situation." *Id.*  The County later offered Richardson a settlement of $330,000, but he rejected the offer.  Two months later, Richardson filed this complaint.

Based on these facts, Richardson alleged that "DPIE intentionally and maliciously singled-out [Richardson] in its permit, inspection, and enforcement practices," and that DPIE's actions against Richardson were "materially different than those actions taken against similarly situated businesses operating at the Iverson Mall." *Id.*  Richardson further alleged that DPIE had identified him for different treatment because of his "racial or ethnic status," and because he was not as "politically connected" as large business owners in the Iverson Mall.  J.A. 20, 23.

The defendants moved for judgment on the pleadings under Rule 12(c).  As relevant here, the defendants argued that Richardson lacked standing to pursue his claim.  They contended that Richardson had not suffered an injury in fact because he had not applied for, and had not been denied, a use and occupancy permit.  The defendants also argued that Richardson's claims were not ripe because he could still apply for a permit and, if the application were denied, he could file an administrative appeal under Prince George's County Code.

The district court granted the defendants' motion for judgment on the pleadings under Rule 12(c), holding first that Richardson failed to establish standing under Article III because he failed to plausibly allege an injury in fact.  According to the court, because Richardson had not applied for, and thus the County had not denied him, a use and occupancy permit, Richardson failed to allege that he was injured by the County's conduct.

The court alternatively ruled that Richardson's claim was not ripe, because Richardson had not adequately alleged that any attempt to obtain a permit would have been futile. The court stated that the Director of DPIE had offered to meet with Richardson to discuss a long-term solution related to his leased property, and that Richardson had failed to allege that he had accepted the Director's invitation. Accordingly, the court concluded that Richardson's allegations did not show that any attempt to obtain a permit would have been futile. Based on this analysis, the district court dismissed Richardson's complaint without prejudice.

On appeal, Richardson challenges both bases for the court's dismissal of his case. We will address in turn the court's rulings on standing and ripeness.

## II.

### A.

A case in federal court cannot proceed unless the party seeking relief has "standing" to bring the claim in accordance with Article III of the United States Constitution. *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 778 (4th Cir. 2023). "This requirement ensures that a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). To meet this standing requirement, a plaintiff must show: "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *John &*

8

*Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 628 (4th Cir. 2023) (internal quotation marks omitted), *cert. denied*, 144 S. Ct. 2560 (2024).

To survive a motion for judgment on the pleadings, a plaintiff must plausibly allege Article III standing. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). The injury-in-fact component of Article III standing effectively excludes injuries that are "conjectural or hypothetical" by focusing on the question whether there has been "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* (internal quotation marks omitted); *see John & Jane Parents 1*, 78 F.4th at 629 (explaining that the injury-in-fact prong "requires either a current injury, a certainly impending injury, or a substantial risk of a future injury").

We disagree with the district court's conclusion that Richardson failed to allege an injury in fact on his equal protection claim. The Supreme Court has recognized that, when a plaintiff alleges that a government entity has "erect[ed] a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group," that plaintiff is not required to allege "that he would have obtained the benefit but for the barrier." *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). The injury in such a case "is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Id.* (internal quotation marks omitted); *see Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159 (9th Cir. 2024) ("In discriminatory barrier cases[,] the denial of equal treatment resulting from the imposition of the barrier is a cognizable injury even apart from the ultimate inability to obtain the benefit." (internal quotation marks omitted)).

9

A plaintiff pursuing a discriminatory barrier claim nonetheless must show that he or she is "able and ready" to apply for the benefit at issue. *Carney v. Adams*, 592 U.S. 53, 60 (2020) (internal quotation marks omitted). "Whether a plaintiff is able and ready to pursue a benefit . . . turns on the specific facts of the case." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 206 (3d Cir. 2021) (internal quotation marks omitted). So, a plaintiff may be "able and ready to apply for a benefit" even though he or she has not taken "every step required to apply immediately upon the conclusion of litigation." *Id.*

In the present case, the district court erred by exclusively focusing on the fact that Richardson had not yet applied for a use and occupancy permit. In doing so, the court failed to address the substance of Richardson's complaint, which was that the County had imposed barriers preventing him from obtaining a use and occupancy permit while allowing several other businesses to proceed without those barriers. According to Richardson, because of his status as a minority-owned, small business, DPIE employees treated Richardson less favorably than other similarly situated businesses by issuing improper correction orders, by imposing substantial fines, and by making statements intended to discourage him from applying for a permit.

Richardson alleged that owners of the other businesses receiving different, preferential treatment were of a different race or were more "politically connected" to the County decision-makers. J.A. 23. Richardson also alleged that DPIE employees repeatedly stated that he could not receive a use and occupancy permit for his business until Iverson Mall's permit issues with the County were resolved. DPIE employees

10

allegedly made these statements while allowing other businesses to obtain the necessary permits and to move into the Mall.

Richardson also asserted that he transferred a liquor license to the address of the leased property and performed work on the property to prepare to open his business there. And Richardson asserted that he repeatedly asked DPIE employees when he could apply for a use and occupancy permit but that those employees discouraged him from proceeding further at that time.

Given the scope of these allegations, we conclude that Richardson sufficiently alleged an injury in fact for purposes of his equal protection claim. His allegations focused on the County's discriminatory treatment of him in the permitting process due to the fact that he is a Black man who owns a small business. Those allegations sufficiently stated that he would have been able and ready to apply for a use and occupancy permit and to open his business if the discriminatory barriers had been removed. Richardson alleged "actual steps" that he took, which "demonstrate[d] a real interest in seeking" a use and occupancy permit. *Ellison*, 11 F.4th at 207. In view of these allegations, Richardson sufficiently alleged an injury in fact for purposes of Article III standing.

### B.

The district court alternatively relied on the ripeness doctrine in granting the County's motion for judgment on the pleadings. A "[r]ipeness analysis holds much in common with standing analysis." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 n.10 (4th Cir. 2013). In considering ripeness, courts address "the appropriate timing of judicial intervention." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018)

11

(internal quotation marks omitted). "A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe*, 713 F.3d at 758 (internal quotation marks omitted). Nonetheless, "plaintiffs are not required to undertake futile exercises in order to establish ripeness and may demonstrate futility by a substantial showing." *Hamilton v. Pallozzi*, 848 F.3d 614, 621 (4th Cir. 2017) *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1 (2022); *see Ellison*, 11 F.4th at 205 ("[T]he failure to apply formally for a benefit or opportunity will not preclude standing if application would be futile.").

We disagree with the district court's conclusion that Richardson's claim was not ripe for the same reasons we have concluded that Richardson sufficiently alleged an injury in fact. Richardson's allegations regarding the County's conduct, which included the County's allegedly selective imposition of fines and its creation of other barriers solely directed at Richardson, were sufficient to demonstrate that Richardson had suffered an injury, and that his claim was not wholly conjectural or hypothetical. *See Doe*, 713 F.3d at 758.

Also, contrary to the district court's holding, Richardson adequately alleged that applying for a use and occupancy permit would have been futile. As we already have observed, Richardson asserted that DPIE employees repeatedly told him that he could not obtain a use and occupancy permit until Iverson Mall's permit issues were resolved. *See Ellison v. Connor*, 153 F.3d 247, 255 (5th Cir. 1998) (holding that plaintiffs demonstrated futility in applying for certain permits because they had received letter stating that applications would be denied). And Richardson further alleged that DPIE employees

12

performed targeted inspections of his leased property while treating other businesses differently regarding their ability to operate in Iverson Mall before the Mall's permitting issues had been resolved.  *See Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022) ("[A] plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face, or the manipulation of a zoning process out of discriminatory animus to avoid a final decision." (citation omitted)).  Richardson thus adequately alleged sufficient facts to support the inference that DPIE would have denied Richardson a use and occupancy permit if he had applied for one.

Our conclusion is not altered by the fact that the Director of DPIE invited Richardson to meet to discuss potential solutions. Notably, there are no additional allegations in the complaint regarding this meeting, including why the meeting did not take place.  When viewed in the light most favorable to Richardson, the allegations of the complaint do not indicate that if Richardson had participated in such a meeting, he would have obtained a use and occupancy permit from the County.  We therefore conclude that Richardson's allegations adequately demonstrated that his equal protection claim was ripe, including that any attempt by Richardson to obtain a permit would have been futile.

We finally observe that in our present review of the district court's judgment on the pleadings, we do not opine on the merits or the strength of Richardson's claim.  *See PEM Entities LLC v. Cnty. of Franklin*, 57 F.4th 178, 182 (4th Cir. 2023).  We address only the limited issues raised on appeal addressing the sufficiency of Richardson's complaint.  And we note that because the parties have engaged in substantial discovery in this case, the

13

opportunity for consideration of the merits of Richardson's case likely will occur in summary judgment proceedings.

III.

Accordingly, we vacate the district court's decision dismissing Richardson's complaint at the pleadings stage, and we remand the case for further proceedings.[3]

<em>VACATED AND REMANDED</em>

---

[3] Because we vacate the district court's judgment, we need not address Richardson's alternative argument that the court abused its discretion by entertaining the motion for judgment on the pleadings after the parties had expended substantial resources in conducting discovery.