**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1776
_____

BRUCE E. ELLISON,
                              Appellant

v.

AMERICAN BOARD OF ORTHOPAEDIC SURGERY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-16-cv-08441)
District Judge:  Honorable Kevin McNulty
_____

Argued:  April 12, 2021
_____

Before:  CHAGARES, JORDAN, and SCIRICA, <u>Circuit
Judges</u>

(Filed: August 30, 2021)
_____

Andrew L. Schlafly [ARGUED]
939 Old Chester Road
Far Hills, NJ 07931
        *Counsel for Appellant*


Lawrence J. Joseph
1250 Connecticut Avenue, N.W.
Suite 700-1A
Washington, DC 20036
        *Counsel for Amici National Medical Association, Alan D. Ullberg, and American Board of Physician Specialties*


Daniel C. Green [ARGUED]
Vedder Price
1633 Broadway
47th Floor
New York, NY 10019

Gregory G. Wrobel
Vedder Price
222 North LaSalle Street
Suite 2600
Chicago, IL 60601
        *Counsel for Appellee*

Jack R. Bierig
Schiff Hardin
233 South Wacker Drive
Suite 7100
Chicago, IL 60606
    *Counsel for Amicus American Board of Medical*
    *Specialties*


Jason S. Rathod
Migliaccio & Rathod
412 H Street, N.E.
Suite 302
Washington, DC 20002
    *Counsel for Amicus Open Markets Institute*

_____

OPINION OF THE COURT
_____

CHAGARES, <u>Circuit Judge</u>.

Bruce Ellison appeals an order of the District Court dismissing his second amended complaint against the American Board of Orthopaedic Surgery ("ABOS") with prejudice for failure to state a claim. Ellison alleges that ABOS violated antitrust law by refusing to let him complete its certification examination, and that he cannot obtain medical staff privileges and employment at certain hospitals in northern New Jersey without ABOS certification. However, Ellison, who practices medicine in California, has not attempted to apply for medical staff privileges or taken any concrete steps

3

to practice in New Jersey. His assertions that ABOS has injured him are thus speculative, and he lacks standing to maintain his claim in federal court. The District Court did not address standing and instead dismissed Ellison's complaint on the merits. But federal courts lack jurisdiction to reach the merits in the absence of standing, so we will vacate the District Court's order and remand with instructions to dismiss the case without prejudice.

I.

Bruce Ellison is an orthopedic surgeon who practices in California. He wants to move to northern New Jersey and practice at Rutgers University Hospital, St. Peter's University Hospital, or one of the hospitals in the RWJBarnabas Health system. These hospitals are members of the American Hospital Association ("AHA"), and they generally grant medical staff privileges to physicians with M.D. degrees only if those physicians have been certified by a member of the American Board of Medical Specialties ("ABMS"). Ellison consequently sought certification by ABOS — the ABMS member board that certifies orthopedic surgeons — around 2012. ABOS only certifies surgeons who successfully complete its multistep certification examination. Ellison passed the first step of ABOS's exam, but ABOS prohibited him from taking the second step until he first obtained medical staff privileges at a hospital.

Ellison has yet to apply for staff privileges. He believes the New Jersey hospitals where he desires to practice will reject his application, as their bylaws provide that they generally grant privileges only to physicians who are already board

4

certified.[1]  According to Ellison, submitting an application is inadvisable because the rejection of staff privileges can seriously harm a physician's reputation and results in an automatic adverse entry in the National Practitioner Data Bank. Ellison believes he is thus stuck in a Catch-22 where he cannot obtain hospital medical staff privileges because he lacks ABOS certification, and he cannot obtain ABOS certification because he lacks hospital medical staff privileges.  So, Ellison has neither completed ABOS's certification exam nor obtained employment at a hospital in New Jersey.

Ellison attributes this situation to anticompetitive conduct by ABOS.  Ellison filed a lawsuit against ABOS in 2016 under state law in New Jersey state court, but ABOS removed the matter to federal court.  Ellison later amended his complaint to allege that ABOS violated the Sherman Act, 15 U.S.C. § 1.  The District Court dismissed Ellison's initial complaint without prejudice upon a motion by ABOS, and it subsequently dismissed the amended complaint without prejudice after a renewed motion by ABOS.  Although ABOS moved to dismiss each complaint on multiple grounds, including lack of subject matter or personal jurisdiction, the District Court avoided the jurisdictional grounds and instead held in each of its orders of dismissal that Ellison failed to state a claim for relief.

Ellison subsequently filed his second amended complaint (the "SAC"), which again pleaded that ABOS violated section one of the Sherman Act.  Ellison based his

---

[1] These hospitals' bylaws contain an exception for physicians who complete their residencies shortly before applying, but Ellison does not qualify.

5

antitrust claim on two theories. First, ABOS or ABMS allegedly reached an illegal agreement with AHA or its New Jersey members, whereby ABOS only grants certification to physicians with hospital privileges and AHA hospitals only grant privileges to physicians with ABMS certifications. Second, Ellison suggests that ABOS's hospital privileges requirement constitutes an illegal tying arrangement. Ellison contends that ABOS has a monopoly over the certification of orthopedic surgeons with M.D. degrees in northern New Jersey, and it exercises its power in that market to require aspiring orthopedic surgeons to obtain hospital medical staff privileges. Because hospitals require orthopedic surgeons to have ABOS certification, the agreement or tie allegedly secures a steady stream of revenue for ABOS. ABOS's conduct allegedly reduces competition in the northern New Jersey market for certification and the supply of orthopedic surgeons who can serve patients. Ellison further contends that ABOS's requirement is unreasonable because many doctors do not practice at hospitals, such as those who operate exclusively at ambulatory surgery centers. He claims that ABOS's actions have prevented him from obtaining employment at New Jersey hospitals and caused him to lose compensation. Ellison accordingly seeks recovery for his losses and an injunction ordering ABOS to let him complete its certification exam.

ABOS moved to dismiss the SAC for lack of standing, lack of personal jurisdiction, improper venue, and failure to state a claim. The District Court granted ABOS's motion and dismissed the SAC with prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The court considered the allegations of an illegal agreement between ABOS and northern New Jersey hospitals conclusory and lacking in factual support, opining that they failed to

6

address the possibility that hospitals independently require board certification because it is an indicator of a physician's competence. The District Court similarly held that a tying arrangement was implausible because ABOS does not derive any direct economic benefit from surgeons' acquisition of hospital staff privileges. The court also noted that Ellison was not forced to purchase an unwanted tied product because he actively desired both certification and staff privileges. The District Court again declined to consider whether the complaint should be dismissed for lack of standing or personal jurisdiction, reasoning that it was unnecessary in light of its decision on the merits. The court dismissed the case with prejudice, holding that further amendment would be futile. Ellison timely appealed.

II.

We have jurisdiction over the District Court's final order of dismissal under 28 U.S.C. § 1291.[2] The parties dispute whether the District Court had jurisdiction to enter that order, though. The District Court did not resolve this dispute

---

[2] We exercise plenary review over the grant of a motion to dismiss. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (acknowledging that review of dismissal for lack of subject matter jurisdiction or failure to state a claim is plenary); Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 780 (3d Cir. 2018) (noting that review of dismissal for lack of personal jurisdiction is plenary). In doing so, we accept all well-pleaded allegations as true and construe them in the light most favorable to the non-moving party. Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011).

and instead chose to dismiss the SAC on the merits. This was error because "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007). We may resolve the jurisdictional issues in the first instance on appeal, as we have an obligation to assure ourselves that jurisdiction exists. See Finkelman v. Nat'l Football League, 810 F.3d 187, 193 (3d Cir. 2016); Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003) (noting that courts must ensure that they and the courts from which the record came have jurisdiction). We conclude that the District Court lacked subject matter jurisdiction because Ellison lacked standing under Article III of the Constitution.

Article III limits the federal courts to adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "Courts enforce the case-or-controversy requirement through the several justiciability doctrines," which "include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009). Standing is "perhaps the most important of these doctrines." Allen v. Wright, 468 U.S. 737, 750 (1984). Standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." Id.

8

Injury in fact is often determinative of standing, and it is our focus here. See Toll Bros., 555 F.3d at 138; see also Spokeo, 136 S. Ct. at 1547 (describing injury in fact as the "[f]irst and foremost" element of standing). The purpose of the injury-in-fact requirement is "to distinguish a person with a direct stake in the outcome of a litigation — even though small — from a person with a mere interest in the problem." Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017) (quoting United States v. Students Challenging Regul. Agency Procs. (SCRAP), 412 U.S. 669, 689 n.14 (1973)). A plaintiff seeking to establish injury in fact "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). A concrete injury is real rather than abstract, and a particularized injury is one that affects the plaintiff in a personal and individual way. Id. Injury is imminent if it is certainly impending; allegations of merely possible future injury are insufficient. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). Imminence is a "somewhat elastic" concept, but it requires that a plaintiff "demonstrate a realistic danger of sustaining a direct injury." N.J. Physicians, Inc. v. President of the United States, 653 F.3d 234, 238 (3d Cir. 2011) (emphasis omitted).

There are two more principles to consider when a plaintiff such as Ellison alleges that he has been denied a benefit or opportunity. First, the failure to apply formally for a benefit or opportunity will not preclude standing if application would be futile. Carney v. Adams, 141 S. Ct. 493, 503 (2020) ("[O]ur precedents have also said that a plaintiff need not 'translat[e]' his or her 'desire for a job . . . into a formal application' where that application would be merely a

9

'futile gesture.'" (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365–66 (1977))); see also Sporhase v. Nebraska ex rel. Douglas, 458 U.S. 941, 944 n.2 (1982); Namisnak v. Uber Techs., Inc., 971 F.3d 1088, 1092–93 (9th Cir. 2020). However, simply declaring that applying would be futile does not necessarily establish standing, either. A plaintiff who claims that he was deterred from applying for a benefit by wrongful practices bears the "burden of proving that he would have applied . . . had it not been for those practices," as "[t]he known prospect of [wrongful] rejection shows only that [individuals] who wanted [benefits] may have been deterred from applying for them. It does not show which of the nonapplicants actually wanted such [benefits], or which possessed the requisite qualifications." Teamsters, 431 U.S. at 368–69; see also Newark Branch, N.A.A.C.P. v. Town of Harrison, 907 F.2d 1408, 1415 (3d Cir. 1990) (applying Teamsters in context of standing). While futile gestures are not needed to establish standing, allegations of futility alone do not necessarily suffice to show a concrete, particularized, and actual or imminent injury.

That leads us to the second principle that applies in circumstances like Ellison's. A plaintiff who alleges that he has been denied a benefit or opportunity for which he did not actually apply must generally plead enough facts to show that "he is 'able and ready' to apply." Carney, 141 S. Ct. at 500 (quoting Gratz v. Bollinger, 539 U.S. 244, 262 (2003)). This requirement lends concrete substance and imminence to an injury that would otherwise be purely hypothetical. See Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs., 946 F.3d 1100, 1108 (9th Cir. 2020) ("It is a plaintiff's ability and readiness to bid that ensures an injury-in-fact is concrete and particular. . . . Entering a bid

10

makes the injury actual; deciding not to bid makes the injury imminent.").[3]

Whether a plaintiff is "able and ready" to pursue a benefit or opportunity turns on the specific facts of the case. See Carney, 141 S. Ct. at 501. This is not necessarily a high bar to clear.[4] For example, a plaintiff may be able and ready to apply for a benefit even if he or she has not taken every step required to apply immediately upon the conclusion of litigation. See Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Mich. Gaming Control Bd., 172 F.3d 397, 405–06 (6th Cir. 1999) (noting that a plaintiff need not "be able and ready to submit a proposal *immediately*" where remaining steps would involve "substantial time and expense"). The Supreme Court has even left unresolved "whether a statement

---

[3] While cases applying the "able and ready" standard typically involve equal protection claims, the standard is not limited to that context. The standard's applicability turns not on the right that a plaintiff asserts, but on the nature of the injury that the plaintiff alleges. Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton, 422 F.3d 490, 497–98 (7th Cir. 2005); see also Lujan, 504 U.S. at 576 ("[T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right.").

[4] The plaintiff's burden to establish standing depends on the procedural posture of the case, as the elements of standing need only be supported "with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561. As in Carney, there are many cases where a plaintiff's ability and readiness to apply cannot be definitively determined at the pleading stage.

of intent alone under [some] circumstances could be enough to show standing." Carney, 141 S. Ct. at 502.

But even a statement of intent to take future action must reflect a concrete intent to do so imminently, rather than indefinite "'some day' intentions." Lujan, 504 U.S. at 564; see Carney, 141 S. Ct. at 502 ("Precedent supports the conclusion that an injury in fact requires an intent that is concrete.").[5] For example, the Supreme Court held that standing was lacking in Carney because the plaintiff's statement that he would apply for a judgeship "[stood] alone without any actual past injury, without reference to an anticipated timeframe, without prior judgeship applications, without prior relevant conversations, without efforts to determine likely openings, without other preparations or investigations, and without any other supporting evidence." 141 S. Ct. at 501. The Supreme Court's list of considerations illustrates that there are a wide variety of factors that may bear on a plaintiff's intent to pursue a benefit in the near future. And as with standing analysis more broadly, whether a plaintiff is "able and ready" to apply for a benefit is not reducible to a strict rule. But in most cases, a plaintiff will need to plead that he or she took some actual steps that demonstrate a real interest in seeking the alleged benefit. See,

___

[5] As a result, courts often require plaintiffs to show that they have concrete plans to imminently pursue a desired course of action, even if that requirement is not phrased in terms of whether the plaintiffs are "able and ready" to do so. See, e.g., MGM Resorts Int'l Global Gaming Dev., LLC v. Malloy, 861 F.3d 40, 47–48 (2d Cir. 2017); Storino, 322 F.3d at 297 (holding that plaintiffs' proposed injury was conjectural where they might not apply for a variance "for a lengthy period of time, possibly even years").

e.g., Aaron Priv. Clinic Mgmt. LLC v. Berry, 912 F.3d 1330, 1337 (11th Cir. 2019) (holding injury in fact was not established where the plaintiff failed to allege that it took any concrete steps to found a methadone clinic, "such as selecting a clinic location, securing a lease option, consulting with relevant government officials, applying for the necessary permits or certifications, or associating with potential clients"); Finkelman, 810 F.3d at 195 (holding that the plaintiff failed to allege injury in fact where he "took no meaningful action" to pursue the alleged opportunity); Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1161 (8th Cir. 2008) ("[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition."). And in all cases, a plaintiff who is "able and ready" to apply for a benefit must at least plead enough facts to show a "direct stake in the outcome of a litigation," rather than a "mere interest in the problem." Cottrell, 874 F.3d at 162 (quoting SCRAP, 412 U.S. at 689 n.14).

With these principles in mind, we conclude that Ellison lacks standing. Ellison alleges that ABOS has injured him by refusing to let him complete his certification exam. This refusal allegedly prevents him from obtaining medical staff privileges at the northern New Jersey hospitals where he wants to practice, which effectively precludes his employment. But Ellison has neither applied for medical staff privileges nor alleged that he has taken any specific steps that would otherwise position him to practice at those hospitals, such as obtaining a license to practice medicine in New Jersey. He has thus failed to allege that he is "able and ready" to apply for staff

13

privileges, and his injury is conjectural rather than concrete and imminent.

Ellison argues that he did not need to plead that he took any steps to practice in New Jersey, as it was a foregone conclusion that the hospitals he identified would not hire him. According to Ellison, applying for staff privileges at these particular hospitals would be futile in light of their certification requirements. The SAC references multiple hospital bylaws that allegedly set forth these requirements. Ellison also alleges that the denial of staff privileges could significantly harm his reputation, particularly because it would automatically result in an adverse entry in the National Practitioner Data Bank. While ABOS contests that the denial of staff privileges would automatically result in an adverse entry, we have nevertheless previously observed that "the absence of staff privileges is devastating to a physician, especially to a specialist such as a surgeon." Miller v. Indiana Hosp., 843 F.2d 139, 141 n.2 (3d Cir. 1988). Although it is unclear exactly how damaging the rejection of Ellison's application would be, we will assume without holding that it would have been futile for Ellison to apply formally.

However, as noted above, Ellison is not able and ready to apply for staff privileges merely because it might be futile to actually do so. It would be futile for a student who has yet to enter medical school to apply for staff privileges, but we could not reasonably conclude that the student was thus able and ready to apply for those privileges. Ellison must therefore plead something more to indicate that he was positioned to practice at the hospitals he specified in the near future. But the SAC does not allege that Ellison took any steps to that effect. Indeed, it alleges virtually no acts by Ellison apart from taking

14

the first part of ABOS's certification exam.[6] That is not enough to establish a concrete and imminent injury here, because ABOS certification is not sufficient proof of readiness to practice at New Jersey hospitals. As Ellison alleges in the SAC, "[m]any physicians who obtain ABOS board certification subsequently do not practice at hospitals, but operate at surgery centers exclusively." Appendix ("App.") 82. And if "[n]early 90% of hospitals" nationwide require ABOS certification, as the SAC indicates, then taking ABOS's certification exam is not particularly probative of readiness to practice at the hospitals in northern New Jersey that Ellison identified. App. 73–74. Ellison might just as well choose to remain in California and practice at a hospital there, or he might instead choose to practice at surgery centers in New Jersey (as he has done in California). He might even decide to practice at a hospital that does not require ABOS certification after all. Outside of declaring that Ellison would like to practice at one of three previously identified hospitals or hospital systems in New Jersey, the SAC provides no indication that Ellison has anything more than a hypothetical

---

[6] We note an additional concern regarding Ellison's allegations that he passed the first part of ABOS's certification exam. At oral argument, the parties appeared not to dispute that Ellison would need to retake this part of the exam due to the lapse of time since he first took it. This is problematic if true, as the plaintiff "bears the burden of establishing standing as of the time he brought this lawsuit and maintaining it thereafter." Carney, 141 S. Ct. at 499. While Ellison's completion of the first part of ABOS's exam is not sufficient on its own to establish standing here, the need to repeat that step would only underscore that he is not yet able and ready to practice medicine at hospitals in northern New Jersey.

15

"some day" interest in possibly doing so. See, e.g., Saleh v. Sulka Trading Ltd., 957 F.3d 348, 355 (2d Cir. 2020) (per curiam) (holding that plaintiff's presentation of "hypothetical possibilities, without tangible steps to effectuate those plans" did not create the concrete dispute necessary to establish standing in declaratory judgment action); Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers, 141 F.3d 71, 77–78 (3d Cir. 1998) (holding that plaintiff did not establish actual or imminent injury where it had "yet to devote any of its resources to pursuit of" educational measures and "was unable to say when such measures might be undertaken").

We cannot foreclose the possibility that a statement of intent to apply might be enough to establish standing in some cases. Carney, 141 S. Ct. at 502. Nonetheless, we are persuaded that this is not one of those cases. The SAC fails to allege that Ellison took any concrete steps to substantiate his interest in practicing in New Jersey and, in fact, it readily suggests multiple steps that Ellison could have taken. For example, the hospital bylaws that set forth the certification requirement emphasize that applicants must possess a current and unrestricted license to practice in New Jersey. But the SAC does not allege that Ellison secured a New Jersey medical license, and Ellison conceded at oral argument that he does not have one. Ellison's counsel suggested at argument, however, that licensing is a purely ministerial requirement. Even if so, licensing is a basic requirement of practicing medicine in New Jersey, and one that would have helped demonstrate a concrete intent to do so. Cf. Carroll v. Nakatani, 342 F.3d 934, 942 (9th Cir. 2003) (holding that plaintiff failed to show injury in fact where he "failed to formulate even a basic business plan"). The bylaws list several other similar requirements, and allegations that Ellison satisfied those requirements would similarly have

16

helped demonstrate his ability and readiness to apply for medical staff privileges.

And in light of the exceptions to the certification requirement contained in the hospitals' bylaws, Ellison might have considered informally asking the hospitals whether they would conditionally grant him privileges based on his successful completion of the first step of the certification exam. See Carney, 141 S. Ct. at 501 (describing "prior relevant conversations" and "efforts to determine likely openings" as factors that could bear on ability and readiness to apply for a position). This is another step that would help render Ellison's injury less speculative, and Ellison's counsel stated at oral argument that Ellison actually made these informal inquiries. Unfortunately, Ellison did not actually plead that he did so, and the other allegations in the SAC do not allow us to reasonably draw that inference. In the absence of other allegations that Ellison made real efforts to practice in northern New Jersey, we cannot conclude that Ellison was able and ready to seek medical staff privileges and employment at hospitals in that area. See Whitmore v. Arkansas, 495 U.S. 149, 155–56 (1990) ("A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."). Ellison's alleged injury is thus neither concrete nor imminent under the circumstances.

\*   \*   \*   \*   \*

Ellison lacks standing to maintain his claim in federal court, and the SAC must consequently be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). However, dismissal for lack of standing is generally without prejudice. We have noted that "[b]ecause the absence of standing leaves

17

the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." Cottrell, 874 F.3d at 164 n.7 (quoting Korvettes, Inc. v. Brous, 617 F.2d 1021, 1024 (3d Cir. 1980) (per curiam)). Accordingly, we are unable to affirm the District Court's order dismissing the SAC with prejudice.

## III.

For the foregoing reasons, we will vacate the order of the District Court and remand with instructions to dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).