**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1470

_____

EJ MGT LLC,
                    Appellant

v.

ZILLOW GROUP, INC.; ZILLOW, INC.

_____

On Appeal from the District Court
for the District of New Jersey
(D.C. Civil No. 2:18-cv-000584)
District Judge:  Honorable John M. Vazquez

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 16, 2021

_____

Before:  CHAGARES, BIBAS, and FUENTES, <u>Circuit Judges</u>

(Filed: December 3, 2021)

_____

OPINION[*]

_____

_____

[*]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Appellant EJ MGT LLC ("EJ") appeals the District Court's dismissal of its antitrust action with prejudice for lack of Article III standing or, in the alternative, lack of antitrust standing. We agree that EJ lacks Article III standing to pursue its claims for conspiracy to restrain trade, but we will nonetheless vacate the order of the District Court and remand with instructions to dismiss the case without prejudice.

I.

We write primarily for the parties and recite only the facts essential to our decision. Zillow, Inc. and Zillow Group, Inc. (together "Zillow") operate a website that displays information about residential properties in the United States. If a property is listed for sale on Zillow, the listing will include the property's listing price and a "Zestimate." The Zestimate is Zillow's estimate of the property's current market value based on Zillow's proprietary algorithm. The Zestimate is usually listed at the top of the page immediately beneath the listing price, but preferred agents that are affiliated with Zillow may enjoy a Zestimate suppression service, which moves the Zestimate to a less prominent position on the page.

EJ owns an estate located at 142 Hoover Drive, Cresskill, New Jersey. After listing the Hoover Drive property for sale on Zillow, EJ discovered that the Zestimate was approximately $4 million less than the listing price. EJ requested that Zillow move the Zestimate, but because EJ had engaged the services of a broker not affiliated with

Zillow, Zillow refused.  EJ has been unable to sell the property and alleges that the prominent Zestimate has price anchoring effects on potential buyers.[1]

EJ filed this action on January 1, 2018.  Zillow filed a motion to dismiss, which the District Court granted without prejudice.  The District Court also dismissed the first amended complaint without prejudice.  On June 1, 2020, EJ filed the second amended complaint ("SAC") alleging claims for conspiracy to restrain trade under the Sherman Act and the New Jersey Antitrust Act.  EJ alleged that Zillow illegally contracted with its premier agents to move the location of the Zestimate, with the effect of tilting the competitive field in favor of these agents at the expense of non-affiliated agents, residential sellers such as EJ, and consumers in the real-estate market.

The District Court dismissed the SAC for lack of Article III standing and for lack of antitrust standing.  Because it had given EJ two prior opportunities to amend to resolve these same deficiencies, the District Court concluded that further opportunity to amend would be futile and dismissed the SAC with prejudice.  EJ timely appealed.

II.[2]

EJ invoked the District Court's jurisdiction under 28 U.S.C. §§ 1331, 1337, and

---

[1] As the District Court noted, there is some ambiguity as to whether the Zestimate for the Hoover Drive property still appears immediately under the listing price or whether, after EJ filed the complaint, Zillow moved the Zestimate to a "View Zestimate" link.
[2] We have jurisdiction over the District Court's dismissal of the SAC under 28 U.S.C. § 1291.  Our review of a district court's order granting a motion to dismiss is plenary. See Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009).  Although we review the denial of leave to file an amended complaint for abuse of discretion, we review de novo the District Court's determination that further amendment would be futile.  See Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp., 823 F.3d 184, 189 (3d Cir. 2016).

1367, but the District Court held that it lacked jurisdiction because EJ did not have standing under Article III of the Constitution to pursue its claims. On appeal, EJ argues that the District Court erred in holding that its injuries were not fairly traceable to the Zestimate suppression agreements, and that, in any event, EJ had standing based on the invasion of its statutory rights under antitrust law.

Article III limits the federal courts to adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy the case-or-controversy requirement, a plaintiff must have Article III standing. Article III standing has three irreducible elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The plaintiff bears the burden of establishing each of these elements. Id.

To establish the first element — that the plaintiff has suffered an injury in fact — the plaintiff must allege an "invasion of a concrete and particularized legally protected interest" resulting in actual or imminent harm. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The SAC identifies two alleged injuries in fact: (1) that EJ allegedly paid a "supracompetitive quality-adjusted price and received a lower quality service" of brokerage services, Appendix ("App.") 120, 123; and (2) that EJ has sustained ongoing costs and lost profits stemming from its inability to sell the property. The District Court held that the SAC contained insufficient detail about the first injury and assumed without deciding that EJ's ongoing costs and lost profits could constitute an injury in fact.

4

At a minimum, EJ has pled that it has been financially harmed as a result of its inability to sell the Hoover Drive property, including its "lost profits and continuing carrying costs such as property taxes, insurance, landscaping, utilities, and other expenses related to owning an investment property." App. 122. These injuries are sufficient for the purposes of Article III standing. See Cottrell v. Alcon Lab'ys, 874 F.3d 154, 163 (3d Cir. 2017) ("Typically, a plaintiff's allegations of financial harm will easily satisfy each of these components, as financial harm is a classic and paradigmatic form of injury in fact." (citation, quotation marks, and alterations omitted)).

However, as the District Court found, the SAC does not adequately allege that EJ's economic injuries are fairly traceable to the Zestimate suppression agreements. This Court has observed that "traceability requires, at a minimum, that the defendant's purported misconduct was a 'but for' cause of the plaintiff's injury." Finkelman v. Nat'l Football League, 810 F.3d 187, 198 (3d Cir. 2016). Conclusory allegations about the effect of prominent negative pricing information are repeated throughout the SAC, but the District Court correctly noted that EJ's causation argument implicitly rests on the assumption that Zestimates are routinely lower than the listing price for homes on Zillow. There are no allegations in the SAC to support this assumption.

EJ argues that the District Court erred in attributing its failure to sell the Hoover Drive property to the discrepancy between the listing price and the Zestimate, as opposed to Zillow's refusal to suppress the Zestimate. In doing so, EJ argues, the District Court improperly required EJ to "disprove each and every conceivable alternate causation theory." EJ Br. 27. Not so. The District Court correctly observed that the SAC did not

sufficiently allege that the Zestimate suppression agreements were a but-for cause of EJ's injuries. In the SAC, EJ included allegations concerning two potential buyers who were "confronted with the prominent Zestimate" and "were turned off from considering a potential purchase of the property based on the discrepancy between the listing price and the Zestimate." App. 33. That allegation specifically attributes the losses of these sales to the value of the Zestimate, not the placement. The SAC further alleges that since 2017, the brokers that have had "the benefit of Zestimate Suppression through the Zestimate Agreements have sold at least eight high-end homes in the town of Cresskill, as compared to just two such sales by Unaffiliated Brokers that [did] not have the benefit of Zestimate Suppression, with an approximate average listing period of 13 months." App. 148. But the SAC does not include sufficient detail to support an inference that these properties were comparable to the Hoover Drive property, nor the most important detail — whether the Zestimates for these properties were higher or lower than the listing price — and therefore cannot support an inference that Zestimate suppression was a but-for cause of EJ's injury. Without having shown causation, EJ cannot establish that it has Article III standing to pursue damages for its economic injuries.

Finally, EJ argues that the SAC alleges violations of its statutory rights, which alone are sufficient to confer Article III standing. EJ contends that, in entering into the Zestimate suppression agreements, Zillow has "tilt[ed] the competitive playing field" and degraded the quality of brokerage services consumed by EJ, EJ. Br. 30, the consumption of which is "in and of itself [] a harm," EJ Reply 19. Non-economic harms can in some instances serve as injuries sufficient to confer Article III standing, see In re Google Inc.

6

Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 134 (3d Cir. 2015), but standing "requires a concrete injury even in the context of a statutory violation," Spokeo, 578 U.S. at 341. Assuming the consumption of lower quality services constitutes such an injury, as the District Court recognized, the SAC does not allege in any non-conclusory manner that EJ consumed lower quality brokerage services at supracompetitive prices. The SAC does not include information on how much EJ paid for brokerage services or allege what made the price "supracompetitive." App. 15. The only elaboration the SAC provides on this point is that the "lower quality of broker service . . . is evidenced by [EJ's] inability to sell its property . . . ." App. 143. That circular reasoning is plainly insufficient, as it does not explain how the price that EJ paid was supracompetitive as adjusted for the quality of the brokerage services it consumed.[3]

\* \* \* \* \*

EJ lacks Article III standing to pursue its antitrust claims, and therefore the SAC was properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). However, because "the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper." Ellison v. Am. Bd. of Orthopaedic Surgery, 11 F.4th 200, 209 (3d Cir. 2021) (citation omitted). That is the case here, and we therefore cannot affirm the District Court's dismissal with prejudice.

---

[3] Because we conclude that the District Court lacked subject matter jurisdiction, we do not reach the issue of whether EJ has antitrust standing to bring its conspiracy to restrain trade claims.

III.

For the foregoing reasons, we will vacate the order of the District Court and remand with instructions to dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).