**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3064-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RODGER L. PURVIS, a/k/a
RODGER LEWIS PURVIS,
ROGER L. PURVIS, SHAKE
PURVIS, RODGE L. PUURVIS,
RODGER LANE PURVIS,
ROGER LANE PURVIS,
SNAKE PURVIS and
RODGER L. PUURVIS,

    Defendant-Appellant.

_____

Submitted November 6, 2024 – Decided February 21, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 21-05-0548.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Samuel Carrigan, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Liza B. Fleming and Leslie-Ann M. Justus, Deputy Attorneys General, of counsel and on the brief).

PER CURIAM

Defendant Rodger L. Purvis appeals from his jury trial convictions for unlawful possession of a firearm and a large-capacity ammunition magazine and from his contemporaneous guilty-plea conviction for possession of a firearm by a previously convicted person. He contends the trial court erred in denying his motion to suppress the handgun and ammunition clip found during an automobile-exception search following a traffic stop. He also argues, for the first time on appeal, that his firearms convictions violate the Second Amendment. After carefully reviewing the record in light of the parties' arguments and governing legal principles, we affirm the denial of defendant's suppression motion substantially for the same reasons set forth in Judge Gary N. Wilcox's cogent written opinion. We note that defendant failed to preserve his Second Amendment claim when he pled guilty to the certain persons offense. But even assuming his newly-minted Second Amendment claim is properly before us, we would reject it on the grounds that a defendant cannot challenge the constitutionality of New Jersey's firearm permit system without first applying for a permit. Furthermore, defendant has no Second Amendment right

2

to carry firearms given his prior convictions, which include crimes involving violent and assaultive behavior.

I.

We discern the following facts and procedural history from the record. On January 28, 2021 at around 10:30 p.m., Rochelle Park Patrol Police Officer Christopher Kiszka observed a car with a broken headlight driving in the left lane on Route 17. Kiszka activated his lights and sirens to effectuate a stop. He approached the passenger side of defendant's vehicle and immediately smelled the odor of marijuana emanating through the open front passenger window.[1] Kiszka also observed numerous suspected marijuana buds scattered throughout the vehicle.

Once backup arrived, Kiszka approached the driver's side of the vehicle, opened the driver's side door, and asked defendant to exit. Kiszka saw a handgun ammunition magazine between the driver's seat and door, causing him to believe a handgun "was in close proximity" to the magazine. He asked

---

[1] The stop in this case occurred when possession of marijuana was unlawful. The New Jersey Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act (CREAMMA), N.J.S.A. 24:6I-31 to -56, now precludes police from using the odor of marijuana to establish probable cause to search. See N.J.S.A. 2C:35-10(b)(1) ("The odor of marijuana . . . shall not constitute reasonable articulable suspicion to initiate a search of a person to determine a violation.").

defendant to exit the vehicle multiple times, to which defendant repeatedly asked why. Defendant finally exited the vehicle and was placed in handcuffs.

The ensuing search of the vehicle revealed a loaded black Taurus 9-mm handgun. The officers also found two additional rounds of ammunition in the driver's door, a package of cigars "commonly used to smoke CDS marijuana," two Ziploc bags of suspected marijuana, and a digital scale. Kiszka acknowledged that he did not collect the loose buds or take photographs of the interior of defendant's car.

In May 2021, defendant was charged by indictment with second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); fourth-degree unlawful possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j); and second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1).

Defendant moved to suppress the physical evidence seized from his car and statements he made to police. On February 3 and March 9, 2022, Judge Wilcox convened hearings on defendant's motions. On April 8, Judge Wilcox issued a written opinion suppressing defendant's statements taken by law enforcement after his arrest and at police headquarters but denying the motion to suppress the physical evidence.

A-3064-22

Judge Wilcox explained that Officer Kiszka's smell of marijuana and observation of marijuana buds provided probable cause to believe there was contraband in the car. The judge further found the circumstances giving rise to probable cause were unforeseeable and spontaneous. The judge thus found the search of defendant's vehicle was lawful under the automobile exception to the warrant requirement. Judge Wilcox rejected defendant's argument that CREAMMA should be applied retroactively.

In March 2023, a jury trial was conducted before a different judge. The jury returned guilty verdicts on the counts charging unlawful possession of a weapon and possession of a large-capacity magazine. Defendant thereupon pled guilty to the remaining certain persons offense, admitting that he was previously convicted in 1994 of a crime in Virginia comparable to aggravated assault under New Jersey law.

On May 5, 2023, the trial judge sentenced defendant to an eight-year term of imprisonment with a four-year period of parole ineligibility on the conviction for unlawful possession of a firearm, an eighteen-month term of imprisonment on the conviction for possession of prohibited weapons and devices (specifically, a large capacity magazine), and a five-year term of imprisonment

5

with a five-year period of parole ineligibility for certain persons not to possess a weapons charge. The judge ordered the sentences to run concurrently.

Defendant raises the following contentions for our consideration on appeal:

POINT I

THE [TRIAL] COURT ERRED WHEN IT DID NOT SUPPRESS THE PHYSICAL EVIDENCE FROM THE SEARCH OF THE VEHICLE DESPITE THE STATE'S FAILURE TO PRESERVE THE EVIDENCE THAT PURPORTEDLY GAVE RISE TO PROBABLE CAUSE.

    A. The trial court erred when it determined the State carried its burden at the suppression motion despite the State's failure to present critical evidence directly bearing on the objective reasonableness of the search.

    B. The [trial] court erred in declining to apply the state's ameliorative marijuana laws retroactively.

POINT II

THE PROVISIONS OF NEW JERSEY'S FIREARM REGULATIONS CATEGORICALLY DENYING THE RIGHT TO CARRY A HANDGUN FOR SELF-DEFENSE FOR INDIVIDUALS WITH PRIOR FELONY CONVICTIONS ARE UNCONSTITUTIONAL AS APPLIED TO [DEFENDANT]. (Not raised [at the trial court].)

A. Bruen places the burden on the State to prove that the firearms provisions in question are consistent with the [n]ation's historical tradition of firearm regulation.

B. The State cannot meet its burden because it cannot satisfy either of the two analytic steps required by Bruen; the felon-disarmament provisions underlying the certain persons conviction are not analogous to any historical statute, making them unconstitutional as applied to [defendant].

C. [Defendant] has standing to challenge the permitting scheme because his felony conviction would have rendered any application futile, and those provisions are also unconstitutional as applied to him.

D. Invalidating the permitting and felon-disarmament provisions as applied to [defendant] will not prevent the State from enforcing the remaining valid provisions of New Jersey's firearms regulations.

II.

We first address defendant's contention Judge Wilcox erred in denying the motion to suppress evidence seized from the vehicle. As a general matter, "[o]ur standard of review on a motion to suppress is deferential." State v. Nyema, 249 N.J. 509, 526 (2022). "[A]n appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those

findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (alteration in original) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We "defer[ ] to those findings in recognition of the trial court's 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Nyema, 249 N.J. at 526 (quoting Elders, 192 N.J. at 244); see also State v. Smart, 253 N.J. 156, 164 (2023). Accordingly, "[w]e will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Ibid.

Turning to substantive legal principles, under New Jersey law, the warrantless search of an automobile is permitted if the police "have probable cause to believe that the vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous." State v. Witt, 223 N.J. 409, 447 (2015). Probable cause "requires 'a practical, common[-]sense determination whether, given all of the circumstances, "there is a fair probability that contraband or evidence of a crime

will be found.'"'  State v. Myers, 442 N.J. Super. 287, 301 (App. Div. 2015)

(quoting State v. Moore, 181 N.J. 40, 46 (2004)).

In his written opinion, Judge Wilcox found:

> Regarding the constitutionality of the search, the court finds that the officer satisfied the standard developed in Witt and was therefore permitted to conduct a warrantless search of the automobile. As discussed previously, a warrantless search of an automobile is valid as long as it is "(1) based on probable cause and (2) arising from unforeseeable and spontaneous circumstances." Witt, 223 N.J. at 450. For the first prong, upon legally stopping the car, the officer smelt marijuana emanating from the vehicle. Furthermore, the officer also spotted loose marijuana buds scattered throughout the vehicle. Based on the foregoing, it was objectively reasonable for the officer to believe that there would have been more marijuana located in the car. As such, based on the standard set forth in Witt, the officer had probable cause to believe that there was marijuana in the vehicle, satisfying the first prong.

> For the second prong, the court also finds that the circumstances were unforeseeable and spontaneous. The officer (1) was on a routine patrol; (2) spotted a vehicle with a valid reasonable suspicion that defendant was violating N.J.S.A. 39:3-66 and N.J.S.A. 39:3-74; and (3) was not searching for this specific defendant nor this specific vehicle. The officer's search of the vehicle was not premeditated nor pretextual, and therefore, the search satisfies both prongs of Witt, the officer's search was proper under the automobile exception to the warrant requirement. As such, the court finds that the search of a vehicle is valid, and the evidence obtained from that search will not be suppressed.

These finding are amply supported by the record. Prior to the legalization of marijuana, it was well-settled "that the smell of marijuana itself constitutes probable cause 'that a criminal offense ha[s] been committed and that additional contraband might be present.'" State v. Walker, 213 N.J. 281, 290 (2013) (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 515-16 (2003)). So too it is clear that the probable cause arose spontaneously and unexpectedly during the course of an unplanned traffic stop for an observed motor vehicle infraction. See Witt, 223 N.J. at 447.

We are unpersuaded by defendant's argument that "[t]he State made an incomplete showing at the suppression hearing because it did not preserve the evidence that would have established whether the officer had an objectively reasonable basis to search [defendant's] vehicle." Although the State did not preserve the marijuana buds that Kiszka observed while standing outside the vehicle, we see no abuse of discretion in the motion judge accrediting the officer's testimony regarding the smell of marijuana and his visual observation of marijuana. See Nyema, 249 N.J. at 526.

Nor are we persuaded by defendant's contention that the motion judge "erred in declining to apply the state's ameliorative marijuana laws retroactively." In his opinion, Judge Wilcox noted:

Addressing defendant's argument for retroactivity first, N.J.S.A. 2C:35-5(b)(12)(b)(i) states that "the odor of marijuana or hashish, or burnt marijuana or hashish, shall not constitute reasonable articulable suspicion to initiate a search of a person. . . ." N.J.S.A. 2C:35-5(b)(12)(b) clearly states this section of the statute, concerns conduct which occurred "[o]n and after the effective date of []L. 2021, c. 19 (2C:35-23.1 et al.)." Thus, it is clear the [L]egislature intended for these new marijuana statutes to apply prospectively after the effective date of this particular bill. Because the bill was enacted February 22, 2021, the new statute would not apply to defendant . . . who violated the prior statute on January 28, 2021. Furthermore, because the [L]egislature specifically enacted legislation preventing the smell of marijuana as a basis to search, the fact alone directly counters defendant's argument that the legislature intended to prevent law enforcement from using smell as a basis to search at the enactment of the [c]onstitutional [a]mendment.

As such, the court finds no merit in these arguments and finds further that the smell of marijuana would give cause to search the vehicle.

We agree with Judge Wilcox's legal analysis. In any event, in State v. Cohen, our Supreme Court recently held that CREAMMA does not apply retroactively. 254 N.J. 308, 328 (2023). We have no basis upon which to reach a contrary conclusion nor the authority to do so. See State v. Wilson, 478 N.J. Super. 564, 570 n.1 (App. Div. 2024), appeal denied, 258 N.J. 434 (2024).

A-3064-22

III.

We next address defendant's Second Amendment arguments. Defendant maintains the felon-disarmament provisions of New Jersey's gun permitting scheme are unconstitutional as applied to him. Specifically, he challenges N.J.S.A. 2C:58-3(c)(1)'s prohibition on issuing carry permits to convicted felons, and N.J.S.A. 2C:39-7(b)(1)'s prohibition on possession of firearms by certain persons convicted of enumerated crimes.

As we have noted, defendant did not raise these arguments to the trial court. Furthermore, defendant did not preserve these issues for appellate review when he pled guilty to the certain persons firearms offense. We note that within the plea agreement form defendant signed, there is a section that explicitly provides, "[d]o you further understand that by pleading guilty **you are waiving** your right to appeal the denial of all other pretrial motions except the following:" which is thereafter left bank. (Emphasis in original). The law is well-settled that "[g]enerally, a guilty plea constitutes a waiver of all issues which were or could have been addressed by the trial judge before the guilty plea." State v. Robinson, 224 N.J. Super. 495, 498 (App. Div. 1988); see also State v. J.M., 182 N.J. 402, 410 (2005) (noting that "the failure to enter a conditional plea

under Rule 3:9-3(f) generally bars appellate review of non-Fourth Amendment constitutional issues").

But even putting aside that defendant did not preserve this issue for our review, we are satisfied he has no standing to challenge New Jerey's gun permitting scheme. Our decision in State v. Wade, 476 N.J. Super. 490 (App. Div. 2023), provides guidance on this point.

The circumstances in Wade are strikingly similar to the facts in this matter. In Wade, police stopped a vehicle and smelled marijuana coming from within. Id. at 496. The ensuing search revealed two handguns which neither the driver nor the passenger had a permit to carry. Id. at 496-97. Consequently, the driver and passenger were charged with second-degree unlawful possession of a handgun without a permit. Id. at 497.

After the United States Supreme Court issued it groundbreaking decision in New York State Rifle & Pistol Ass'n., Inc. v. Bruen, 579 U.S. 1 (2022), the defendants in Wade "moved to dismiss [their] criminal charges, arguing that the version of the gun-carry permit statute in effect at the time of their arrest, N.J.S.A. 2C:58-4 (2018), was facially unconstitutional under Bruen." Id. at 495. The passenger-defendant argued that:

> [He] "had never been convicted of any indictable
> offense or disorderly persons offense involving

an act of domestic violence" and "had not been adjudicated delinquent for any offense that, if committed by an adult, would constitute a crime (a) enumerated in . . . the []No Early Release Act[] or (b) that involved the unlawful use or possession of a weapon, explosive or destructive device."

[Id. at 497.]

A certification in support of the passenger's motion also asserted that he was not subject to any disabilities under N.J.S.A. 2C:58-3(c). Ibid.

We rejected the defendants' Second Amendment claims, explaining:

Generally, to establish standing to challenge an allegedly unconstitutional permit statute, the challenger must have applied for a permit or license under the statute. See, e.g., United States v. Decastro, 682 F.3d 160, 164 (2d Cir. 2012); Westfall v. Miller, 77 F.3d 868, 872-73 (5th Cir. 1996); Kendrick v. Bruck, 586 F. Supp. 3d 300, 308 (D.N.J. 2022). Nevertheless, there is a recognized exception to the submission requirement if the challenger can "make a substantial showing that submitting to the government policy would [have been] futile." Bruck, 586 F. Supp. 3d at 308 (citing Ellison v. Am. Bd. of Orthopaedic Surgery, 11 F.4th 200, 206 (3d Cir. 2021)); see also Decastro, 682 F.3d at 164; Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997).

Neither defendant in these appeals applied for a permit to carry a gun. [The passenger's] counsel submitted a certification representing that [the passenger] had no other disqualifying factors and that he would have qualified to receive a permit but for the justifiable need requirement. [The driver] and his

counsel did not submit a certification concerning [the driver's] qualifications for a permit.

Initially, we point out that neither [the driver] nor [the passenger] has established the factual basis for challenging New Jersey's gun-permit statutes. [The driver] has provided no factual basis whatsoever. The certification submitted by [the passenger's] counsel is not based on counsel's personal knowledge; rather, it is based on information received from his client and, therefore, is insufficient to establish facts in dispute. See R. 1:6-6; see also Decastro, 682 F.3d at 164 (explaining that defendant's reliance on the "hearsay statement of an unidentified police desk officer" was insufficient to make a substantial showing of futility).

Even if we accept the certification of [the passenger's] counsel, it does not establish that [the passenger] would have qualified for a gun-carry permit excluding the justifiable need requirement. To receive a permit, [the passenger] would have been required to demonstrate that he was "thoroughly familiar with the safe handling and use of handguns." N.J.S.A. 2C:58-4(c) (2018). Moreover, he would have had to submit certifications from "three reputable persons who ha[d] known [him] for at least three years" and who certified that he was "a person of good moral character and behavior." N.J.S.A. 2C:58-4(b) (2018). Nothing in the record establishes that [the passenger] would have been able to comply with those requirements. Consequently, the record does not reflect that it would have been futile for [the passenger] to have applied for a permit even in the absence of the justifiable need provision.

[Id. at 505-07.]

We continued to state that:

15

> The insufficient record supporting defendants' constitutional challenge illustrates why a motion to dismiss criminal charges is not the proper venue for demonstrating that defendants would have been granted a gun-carry permit but for the justifiable need requirement. If defendants had applied for gun-carry permits, there would be a complete record of why they were not granted the permits. In other words, we would not be left to speculate that defendants were denied the permits because of the justifiable needs requirement.
>
> [Id. at 507.]

Finally, we added that "[n]o New Jersey decision or federal decision addressing New Jersey's gun-permit statutes has held that a defendant has standing to challenge the permit statutes without first having applied for a permit." Id. at 508.

We embrace our colleagues' well-reasoned rationale and apply it to defendant, who likewise did not apply for a permit to carry a handgun. Defendant nonetheless argues that he should be excused from the obligation of applying for a permit, claiming that any such application would have been futile. Defendant asserts:

> Here, [his] plea to the certain persons weapon offense included, as a part of its factual basis, acknowledgement of his felony conviction for Virginia's equivalent of aggravated assault in 1996. The carry-permit statute, both at the time of the alleged offense and now, gives no caveats to the disqualifying factor of prior felony convictions. N.J.S.A. 2C:58-4(c)

16

(2018) and (2022); N.J.S.A. 2C:58-3(c) (2019) and (2023). There are no exceptions, methods for having the disability lifted, or room to consider if the felony-equivalent conviction was nonviolent or did not involve weapons. See generally C. Kevin Marshall, Why Can't Martha Stewart Have A Gun?, 32 Harv. J.L. & Pub. Pol'y 695, 695-698 (2009) (discussing similar permanent disarmament scheme under federal law). Accordingly, any application from [him] made since his felony conviction in the 1990s would have been futile.

We note in the interest of completeness that N.J.S.A. 2C:58-3(c) has other disqualifiers, not just for felony convictions, and defendant has not presented evidence that he would have vaulted the other disqualifying circumstances. For example, in Wade, we noted that the defendant's certification "[did] not establish that [the passenger] would have qualified for a gun-carry permit excluding the justifiable need requirement." Id. at 506. Accordingly, we concluded the defendant did not have standing to challenge N.J.S.A. 2C:58-3(c)(1).

We reach the same conclusion in the present matter. We add that we are at a loss to understand how defendant's claim he has a Second Amendment right to carry a firearm is somehow bolstered by the uncontroverted fact that he has a history of violent felony convictions. That circumstance hardly advances his claim that this prosecution violated his Second Amendment rights. Indeed, it would be perversely ironic if his extensive felony history were deemed to be the

17

circumstance that grants him standing to challenge a handgun permitting scheme which he disregarded.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION