**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-2205**

───────────

JUSTICE 360,

        Plaintiff – Appellant,

v.

BRYAN P. STIRLING, Director of the South Carolina Department of Corrections;
ALAN WILSON, South Carolina Attorney General,

        Defendants – Appellees.

───────────

Appeal from the United States District Court for the District of South Carolina, at
Columbia. Mary G. Lewis, District Judge. (3:20-cv-03671-MGL)

───────────

Argued: May 3, 2022                         Decided: August 3, 2022

───────────

Before AGEE, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

───────────

Vacated and remanded with instructions by published opinion. Judge Agee wrote the
opinion, in which Judge Richardson and Judge Quattlebaum have joined.

───────────

**ARGUED:** Lindsey Caroline Ruff, BOIES, SCHILLER & FLEXNER LLP, New York,
New York, for Appellant. Kevin Alan Hall, WOMBLE BOND DICKINSON (US) LLP,
Columbia, South Carolina, for Appellees. **ON BRIEF:** Jared K. Carter, First Amendment
Clinic, CORNELL LAW SCHOOL, Ithaca, New York; John D. Kassel, KASSEL
MCVEY, Columbia, South Carolina, for Appellant. Alan Wilson, Attorney General,
Robert D. Cook, Solicitor General, J. Emory Smith, Jr., Deputy Solicitor General, OFFICE
OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina;

M. Todd Carrell, Bryant S. Caldwell, WOMBLE BOND DICKINSON (US) LLP, for Appellees.

———————————

AGEE, Circuit Judge:

Justice 360 offers post-conviction representation to South Carolina's death-row inmates. In the case before us, it brings no claims on behalf of those clients, and none of them is a party. Instead, Justice 360 acts solely on its own behalf. The organization's Amended Complaint alleges that South Carolina Code § 24-3-580 ("Identity Statute")—which protects against the disclosure of certain information related to the State's execution protocols—violates its First Amendment right to counsel clients and to participate in public debate about the death penalty. The district court rejected those assertions, and Justice 360 timely appealed, challenging only the dismissal of its claims against South Carolina Department of Corrections ("SCDC" or the "Department") Director Bryan Stirling.[1] Because Justice 360 lacks standing, however, we vacate the district court's judgment and remand with instructions to dismiss for lack of jurisdiction.

I.

Justice 360 suggests that its purpose is to "provide advice and support to individual attorneys who are representing clients in federal capital habeas corpus proceedings." J.A. 48 (citation omitted). It also represents that it endeavors to promote fairness and transparency in the administration of South Carolina's death penalty by lobbying for

---

[1] The organization does not challenge the district court's dismissal of its claims against South Carolina Attorney General Alan Wilson.

changes to existing law, taking part in public education initiatives, and engaging in litigation.

In carrying out the organization's mission, Justice 360's attorneys represent about 40% of South Carolina's death-row inmates. In that capacity, its attorneys counsel clients in selecting among the statutorily authorized methods of execution.[2] To do so, Justice 360 contends it "must conduct a comparative analysis of a variety of possible execution methods, in consultation with expert witnesses and co-counsel, and advise [its] clients" which method to elect, "whether there are any viable, less painful alternatives, and whether to consider an Eighth Amendment challenge." J.A. 11 ¶ 3.

At one time the SCDC disclosed information about its execution protocols to capital defense attorneys upon request. For example, the SCDC provided Justice 360 with its 2002 execution protocol, identifying, among other things: (1) the specific drugs used in

---

[2] From 1995 until 2021, South Carolina permitted condemned inmates to elect between execution by lethal injection or electrocution. The governing statute provided:

> A person convicted of a capital crime and having imposed upon him the sentence of death shall suffer the penalty by electrocution or, at the election of the person, lethal injection under the direction of the Director of the Department of Corrections. The election for death by electrocution or lethal injection must be made in writing fourteen days before the execution date or it is waived. If the person waives the right of election, then the penalty must be administered by lethal injection.

S.C. Code Ann. § 24-3-530(A) (1995). In 2021, the State amended the statute to include an option for execution by firing squad. S.C. Code Ann. § 24-3-530(A) (2021). Under the new statute, South Carolina must certify that at least two methods are available before carrying out an execution so that inmates retain their statutory right of election. *Id.* § 24-3-530(B), (D). If an inmate "waives the right of election, then the penalty must be administered by electrocution." *Id.* § 24-3-530(A).

4

executions by lethal injection, including dosage and sequence; (2) step-by-step instructions for carrying out an execution by electrocution; (3) the titles and qualifications of the members of the execution team; and (4) the specific process by which the SCDC would carry out executions, including the timing of an execution, tasks assigned to each team member, and other logistical information. The SCDC also provided Justice 360 with its 2008 protocol, which "was in effect during the last execution carried out in South Carolina." J.A. 84–85.

But in 2010, the State enacted the Identity Statute, which prohibits disclosure of certain execution-related information:

> A person may not knowingly disclose the identity of a current or former member of an execution team or disclose a record that would identify a person as being a current or former member of an execution team. However, this information may be disclosed only upon a court order under seal for the proper adjudication of pending litigation. Any person whose identity is disclosed in violation of this section shall have a civil cause of action against the person who is in violation of this section and may recover actual damages and, upon a showing of a willful violation of this section, punitive damages.

S.C. Code Ann. § 24-3-580.

Five years later, the South Carolina Office of the Attorney General ("AG") interpreted the Identity Statute's use of the phrase "member of an execution team" "to include an individual or company providing or participating in the preparation of chemical compounds" intended for use in executions. S.C. Att'y Gen. Op., 2015 WL 4699337, at *4 (July 27, 2015) ("2015 AG Opinion"). The AG observed that the Identity Statute "is a remedial measure intended to protect current and former execution team members from the negative consequences stemming from the disclosure of their involvement in a state-

5

sanctioned execution." *Id.* at *2. As a result, the AG reasoned, "the phrase must be broadly construed to extend such a remedy to individuals and companies involved in *any phase of the execution process*." *Id.* (emphasis added). According to the AG, "[t]his need for protection and confidentiality stems from . . . the negative consequences often associated with the recent actions of anti-death penalty advocates." *Id.* at *4.

A.

On September 1, 2020, Lindsey Vann, Justice 360's Executive Director, wrote to Stirling requesting information in anticipation of execution dates being set for three of the organization's clients—Richard Moore, Brad Sigmon, and Freddie Owens. Vann sought the SCDC's "directive or protocol" for lethal injection and electrocution (the two statutorily authorized methods at the time). Among other information, Vann also asked for: (1) the "supplier(s) and/or compounder(s) of the lethal injection drugs (and any supplier(s) of components to be used in compounding)"; (2) "the chain of custody for the drugs"; (3) "[i]nformation regarding the [electric] current intended to be administered, the voltage intended to be administered, and how such voltage will be administered and for what length(s) of time" in the electric chair; and (4) "[j]ob titles and numbers of personnel to make up the execution team, including the titles and number of any SCDC staff, the titles and number of any federal, state, and local law enforcement officers, and the titles and number of any individuals hired on a contractual basis." J.A. 99–101.

The SCDC's Chief Legal and Compliance Officer, Salley Elliott, responded that the Department did "not have any of the drugs in [its] possession to perform an execution by legal injection." J.A. 102. In addition, Elliott noted that the 2015 AG Opinion made clear

6

that Justice 360 was not "entitled" to much of the information it sought, including that "about suppliers/and or [sic] compounders of the lethal injection drugs" and "security and medical personnel." *Id.* Justice 360 then brought the present suit, challenging the constitutionality of the Identity Statute as a violation of its First Amendment rights.

While this case was pending, Moore's execution was scheduled. Justice 360 petitioned the Supreme Court of South Carolina on his behalf seeking, among other things, information about the methods of execution the SCDC intended to use. After initially rejecting these requests, Stirling informed Justice 360 two days before Moore's deadline to select a method of execution that its attorneys could review the SCDC's execution protocols so long as they complied with certain "logistics for review." J.A. 92. These included provisions that "[n]o copies [would] be given," "no photos or other verbatim copying . . . would be allowed," and "any notes must be held confidential and only used to advise Mr. Moore as he chooses his election." *Id.* Several Justice 360 attorneys then arranged to meet with the SCDC to review the protocols. In anticipation of that meeting, the SCDC's general counsel sent them a confidentiality agreement, which provided, in part:

> I, _____, understand and agree that I am being provided access to this sensitive information by SCDC, for the sole purpose of advising Richard Bernard Moore with regards to his election of execution method, and agree to hold the information I receive confidential and to only use said information to accomplish the purpose of advising Richard Bernard Moore on his election of method of execution[.]

J.A. 195. Justice 360's attorneys declined to sign the agreement and canceled the meeting. Moore then refused to sign his notice of election, writing that he could "not make a

selection at this time . . . because my attorney and I do not have information for the protocols. [B]y not selecting does not mean I waive my right to select." J.A. 199.[3]

In response to its perceived difficulties in procuring what it considered necessary information, Justice 360 filed the operative Amended Complaint in this suit, along with a motion for a temporary restraining order and preliminary injunction, seeking to "enjoin[] [the SCDC] from carrying out executions until this case is resolved." J.A. 79. Stirling moved to dismiss, raising the issue of Justice 360's standing to bring its claims, as well as challenges to the merits. The district court granted the motion to dismiss, but not for lack of standing.

The district court began by "assum[ing] Justice 360's First Amendment free speech claim [was] legally nonfrivolous" and that it "ha[d] suffered an injury-in-fact" necessary to maintain Article III standing. *Justice 360 v. Stirling*, No. 3:20-03671-MHL, 2021 WL 4462406, at \*5 (D.S.C. Sept. 29, 2021) (citing *Initiated & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) ("[W]here the plaintiff presents a nonfrivolous legal challenge, alleging an injury to a protected right such as free speech, the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally

---

[3] In a separate proceeding, Sigmon—represented by Justice 360—sued Stirling and others seeking access to the execution protocols under the Sixth, Eighth, and Fourteenth Amendments. After Sigmon and the SCDC agreed to resolve his claims via a consent order, the Department allowed certain Justice 360 attorneys to review information about the execution methods under a confidentiality agreement, which provided that: (1) the information could be used only in their representation of Sigmon and not on behalf of other inmates; and (2) the information was specific to Sigmon's execution and related only to South Carolina's then-current execution protocols—in other words, it would not apply to others in the future.

protected.")). The district court offered no other substantive discussion for its conclusion that Justice 360 possessed standing.

Turning to the merits, the court observed that "Justice 360's First Amendment free speech argument [was] nothing more than a First Amendment right-of-access argument called by another name." *Id.* at *8. And its reason for failing to call its First Amendment claim by "its proper name . . . [was] obvious: Courts have repeatedly rejected First Amendment right-of-access arguments under facts similar to the instant case." *Id.* (first citing *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014) ("Neither the Fifth, Fourteenth, or First Amendments afford [inmates] the broad right 'to know where, how, and by whom the lethal injection drugs will be manufactured,' as well as 'the qualifications of the person or persons who will manufacture drugs, and who will place catheters.'"), and then citing *Owens v. Hill*, 758 S.E.2d 794, 805 (Ga. 2014) ("To the extent that Hill seeks to turn the First Amendment into an Open Records Act for information relating to executions, his claim clearly fails.")). Indeed, according to the district court, "[a]ccepting Justice 360's First Amendment free speech argument here would allow any attorney to gain access to any government record under the guise of advising and educating one's client. Such a result is infeasible and impractical." *Id.* at *11. Thus, the court concluded Justice 360 had failed to state a claim upon which relief could be granted against Stirling and granted his motion to dismiss.[4]

---

[4] The court dismissed Justice 360's claims against Stirling without prejudice after denying its motion for leave to amend. In doing so, the Court entered judgment closing the case. Because no additional allegations would cure the identified legal deficiencies in

Justice 360 timely noted an appeal. We have jurisdiction under 28 U.S.C. § 1291.

B.

In considering Justice 360's appeal, "we may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To that end, several ancillary events have occurred that are related to this case.

One such item is a follow-up letter Justice 360 sent to Elliott asking for the same execution-related information it sought in Vann's previous demand. On this occasion, however, the letter cited South Carolina's Freedom of Information Act ("FOIA"), S.C. Code Ann. § 30-4-10 to -165, as the source for the organization's claim of entitlement to the information. In response, the SCDC's FOIA Office stated that "[m]ost of the records which [Justice 360] ha[d] requested" were subject to various enumerated statutory exemptions or exclusions, J.A. 108 (citing S.C. Code Ann. §§ 30-4-20(c), -40(a)(2), -40(a)(4)), and the remaining "responsive records" were available on the SCDC's "public website," *id.*

Justice 360 then brought an action in the South Carolina Court of Common Pleas for the Fifth Judicial Circuit against the SCDC and Stirling, claiming the Department wrongly denied its FOIA request and seeking a declaratory judgment that "it is entitled to an Order . . . . requiring SCDC to provide the records." J.A. 395; *see also* J.A. 522 (Justice 360 acknowledging that, "[b]ecause there was no movement in [its First Amendment case

---

Justice 360's pleadings, the dismissal order is final and appealable. *See Bing v. Bravo Sys., LLC*, 959 F.3d 605, 614–15 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021).

before the district court], [it] became anxious and so [it] decided to file other actions in state court after [it] filed this First Amendment action").[5] The state court denied Justice 360's request, concluding "the information sought [did] not meet the criteria for public disclosure under" FOIA. J.A. 447. The court reasoned that the "information requested by [Justice 360] constitute[d] security plans and devices adopted and utilized by a public body, SCDC," thereby exempting the records from disclosure. *Id.* (citing S.C. Code Ann. § 30-4-20(c) ("Information relating to security plans and devices proposed, adopted, installed, or utilized by a public body . . . is required to be closed to the public and is not considered to be made open to the public under the provisions of this act.")). According to the court, "revealing additional information from the policy to the public would clearly affect the security of the participants, process and facilities" used to carry out the executions. J.A. 448. The court also determined that the execution protocols were "under the direction of SCDC" and amounted to "policy decision[s] determined by [Stirling]," meaning they were not subject to disclosure. *Id.* (first citing S.C. Code Ann. § 24-3-530; and then citing S.C. Att'y Gen. Op., 2011 WL 1740735 (Apr. 21, 2011) ("2011 AG Opinion")). Justice 360 did not appeal that ruling.

As previously noted, while Justice 360's FOIA litigation and the present case were pending, South Carolina scheduled Moore's execution. However, less than a week before

---

[5] Indeed, Justice 360 brought no less than three additional cases in various courts raising similar issues and seeking the same execution-related information that it seeks here. What distinguishes those other matters is that Justice 360 brought the claims on behalf of its clients rather than in its own name alone as it does here.

11

it was to occur, the SCDC advised the Supreme Court of South Carolina that it "[did] not have, and [would] not be able to obtain, the drugs required for execution by lethal injection." Stay Order at 1, *State v. Moore*, No. 2001-021895 (S.C. Nov. 30, 2020). As a result, that court stayed Moore's execution "until the [SCDC] advise[d] . . . it ha[d] the ability to perform the execution as required by the law." *Id.* Over the next few months, South Carolina also scheduled executions for Justice 360 clients Sigmon and Owens. The South Carolina Supreme Court stayed those as well because the SCDC could not procure the necessary drugs used to administer a lethal injection.

On May 5, 2021, South Carolina Governor Henry McMaster signed into law a bill amending the State's choice-of-execution statute to include an additional option to select a firing squad. *See supra* note 2. A short time later, South Carolina issued two new death warrants for Sigmon and Owens. The Supreme Court of South Carolina entered a second stay for those executions, however, upon receiving affidavits from the SCDC "certifying that . . . the only statutorily approved method of execution available in South Carolina [at that time was] electrocution." *See* Stay Order at 2, *State v. Sigmon*, Nos. 2002-024388 & 2021-000584 (S.C. June 16, 2021); Stay Order at 1, *State v. Owens*, No. 2006-038802 (S.C. June 16, 2021). Because "lethal injection [was] unavailable due to circumstances outside of the control of the [SCDC], and firing squad [was] currently unavailable due to the [SCDC] having yet to complete its development and implementation of necessary protocols and policies," that court directed the clerk "not to issue another execution notice until the State notifies the Court that the [SCDC], in addition to maintaining the availability of electrocution, ha[d] developed and implemented appropriate protocols and policies to carry

12

out executions by firing squad." Stay Order at 2, *Sigmon*, Nos. 2002-024388 & 2021-000584; Stay Order at 1, *Owens*, No. 2006-038802.

Earlier this year, the SCDC announced that it had completed the renovation of its execution chamber, which could now accommodate a firing squad. The SCDC also released a broad overview of the protocol it would use to carry out such an execution. South Carolina then issued execution notices for Justice 360 clients Moore and Sigmon to be carried out on April 29, 2022, and May 13, 2022, respectively.

The day before Moore had to make his election of method, the SCDC reached a private agreement with Justice 360 to provide his attorneys "execution information related to South Carolina's electrocution and firing squad protocols pursuant" to a confidentiality agreement. Justice 360 Supp. Br. 5 n.2. "But as was the case with Sigmon, Justice 360 [could] use that information only in representing Moore and not on behalf of other inmates, and that information [was] specific to Moore's execution and *[was] not represented as applicable on a go-forward basis*." *Id.* (emphasis added); *see supra* note 3. After meeting with his attorneys, Moore elected to be executed by a firing squad.

The Supreme Court of South Carolina then entered yet another stay for Moore (his second) and Sigmon (his third) while a state court challenge to the constitutionality of the firing squad as an execution method remained pending. The court has since directed the clerk "not to issue a notice of execution" for Owens before the court resolves the issue. Admin. Order, *Re: Owens v. Stirling*, No. 2021-CP-40-02306 (S.C. May 5, 2022). Thus, there are currently no planned executions in South Carolina, and none set to be scheduled.

13

II.

Justice 360 raises what it admits are "novel" claims, Opening Br. 54, seeking "access to and use of" the execution-related information being withheld under the Identity Statute, *id.* at 21. It asserts no claims on behalf of any client, but does so only in its own name, contending the law burdens its First Amendment rights. In essence, Justice 360 presents two arguments to support this assertion. First, it suggests the Identity Statute infringes its ability to engage in professional speech by impeding its efforts to counsel clients in choosing a method of execution. Second, the organization maintains the law "burdens [its] practical ability to litigate in furtherance of its political mission." Opening Br. 21.

Throughout its briefs, Justice 360 blends both points, making it difficult to discern where one ends and the other begins. But during oral argument, the organization made clear that it is not "challenging [the] . . . confidentiality provisions" its attorneys signed while representing Sigmon and Moore, Oral Argument at 3:21–24, *Justice 360 v. Stirling*, No. 21-2205 (4th Cir. May 3, 2022) (hereinafter "Oral Argument")—the very agreements through which the organization obtained the necessary information to counsel its clients before suggesting they still impede its ability to represent them effectively, *see* Opening Br. 41 (arguing that the confidentiality agreements limited the organization's ability "to consult experts and challenge the protocols in court"). Furthermore, Justice 360 acknowledged that the "most recent agreement[]" it signed "*did* give [it] the ability to advise [its] clients and bring Eighth Amendment challenges." Oral Argument at 45:21–33 (emphasis added). These concessions, alongside a plain reading of Justice 360's Opening

14

Brief, *see* Opening Br. 21 (stating that its inability to "counsel clients about their statutory and constitutional rights" burdens the organization's "practical ability to litigate in furtherance of its political mission" and engage in "political speech"), suggest that Justice 360's professional speech claim has been subsumed by its contention that the Identity Statute infringes its ability to engage in its desired political speech. Regardless of which theory Justice 360 is pressing, however, our holding and analysis are the same.

That is because, before reaching the merits of Justice 360's claims, we must first recognize that we remain a "court[] of limited jurisdiction. No matter how interesting or elegant a party's argument, the federal courts have no power to breathe life into disputes that come to us without it." *Am. Fed'n of Gov't Emps. v. Off. of Special Couns.* (*AFGE*), 1 F.4th 180, 182 (4th Cir. 2021); *see generally* U.S. Const. art. III, § 2 (providing that federal courts may consider only "[c]ases" and "[c]ontroversies"). Indeed, "[e]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review[.]" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (cleaned up); *see also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (stating that we review a district court's jurisdictional ruling de novo).

Among the many jurisdictional questions we must consider, standing is "perhaps the most important," *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), though it is also "one of 'the [most] amorphous (concepts) in the entire domain of public law," *Flast v. Cohen*, 392 U.S. 83, (1968) (citation omitted). Justice 360, as the plaintiff

15

here, bears the burden of establishing standing to bring its claims. *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

Although "standing requirements are somewhat relaxed in First Amendment cases," *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013), courts may not assign it as a rubber stamp. Rather, Justice 360 still must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). We focus our analysis on the third factor.[6]

___

[6] In doing so, we do not suggest that the organization has satisfied the remaining inquiries, but determining whether it has is unnecessary as a plaintiff must satisfy all three factors. For example, as our precedents make clear, in the context of First Amendment claims, a plaintiff can establish an injury in fact by showing either: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder"; or (2) "a sufficient showing of self-censorship which occurs when a claimant is chilled from exercising his right to free expression." *AFGE*, 1 F.4th at 187 (quoting *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018)). But Justice 360 has not suggested that it has been charged or threatened with prosecution for violating the Identity Statute. Nor does it claim to have been hampered or forced to self-censor from disseminating information that it already possesses.

Moreover, to the extent authority allows us to "peek at the substance of [Justice 360's] arguments," *Transp. Workers Union of Am. v. Transp. Sec. Admin.*, 492 F.3d 471, 474–75 (D.C. Cir. 2007), to determine whether the organization has alleged a cognizable injury in fact, doing so suggests that it has failed to shoulder its burden in establishing a supposed right to "access," Opening Br. 21, 22, 25 n.7, 25–26, 36, 39 n.12, 41, 42, 44, 50, the information under the SCDC's control, *see McBurney v. Young*, 569 U.S. 221, 232 (2013) ("This Court has repeatedly made clear that there is no constitutional right to obtain all the information provided by FOIA laws."); *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40 (1999) (observing that the case involved "nothing more than a governmental denial of access to information in its possession," meaning the State "*could decide not to give out arrestee information at all without violating the First Amendment*" (emphasis added)); *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978) (plurality opinion) ("There is no constitutional right to have access to particular government information, or

16

To satisfy the redressability requirement, Justice 360 must establish that there exists "a non-speculative likelihood that the [alleged] injury would be redressed by a favorable judicial decision." *Frank Krasner Enters., Ltd. v. Montgomery County.*, 401 F.3d 230, 234 (4th Cir. 2005). The Supreme Court has instructed that an organization cannot satisfy this mandate merely by "request[ing] a court of the United States to declare its legal rights . . . in terms that have a familiar ring to those trained in the legal process." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982); *see also* J.A. 36–37 (a)–(c) (Amended Complaint requesting broad declarations of First and Eighth Amendment rights). "Rather, the judicial power to pass constitutional judgment 'is legitimate only in the last resort[.]'" *Burke v. City of Charleston*, 139 F.3d 401, 404–05 (4th Cir. 1998) (quoting *Chi. & Grand Trunk R. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). Here, Justice 360 has failed to show that it would "find *full* redress," *Cooksey*, 721 F.3d at 238 (emphasis added), through a declaration that the Identity Statute "is unconstitutional as applied to [it]" or, in the alternative, that the 2015 AG Opinion's "interpretation . . . is improper and should be invalidated," J.A. 37 (f).

Even if we were to grant Justice 360 the exact relief it has requested, Stirling would still retain pure discretion over whether to provide (or not provide) the execution-related information the organization is seeking. *See* 2011 AG Opinion, 2011 WL 1740735, at *1–2 (providing that "the management of lethal injection executions rests upon the direction

---

to require openness from the bureaucracy. . . . The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." (citation omitted)); *Fusaro v. Cogan*, 930 F.3d 241, 249 (4th Cir. 2019) ("[T]here is no general First Amendment right to access a government record").

of the [SCDC] and its Director"—including "the authority to make rules and regulations"—and that neither Stirling nor the SCDC is "*legally required* . . . to provide information about the particular change in the prior procedures involving the drug protocol, if revised, to the inmate and/or his counsel" (emphasis added)); *see also* S.C. Code Ann. §§ 17-25-370, -380, -400 (setting out the only information to which the inmate is entitled by statute, none of which pertains to how an execution is to be carried out). Moreover, when Justice 360 tried to obtain the protocols through FOIA (as opposed to the First Amendment claims pressed in the present suit), the South Carolina state court held the information constitutes "security plans," J.A. 447, which is not the kind of "public record" that is subject to disclosure, *see* S.C. Code Ann. § 34-2-20(c). Justice 360 did not appeal that ruling.

Thus, even if we were to strike down the Identity Statute or the 2015 AG Opinion, Justice 360 still would have no legal right—through FOIA or any other vehicle—to demand the information it seeks. At most, it could ask Stirling for it; yet, he appears to retain discretion over whether to release such information. And Justice 360 has put forward no evidence establishing that Stirling would, in fact, provide that information if left to his own discretion. Any suggestion that he would do so is speculation built on speculation. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 756–57 (4th Cir. 2013) (holding that a plaintiff's alleged injury was not redressable because it was "purely speculative whether any action by this court" would abate that alleged harm). Justice 360 conceded as much during oral argument when it acknowledged that the information it is seeking does not currently exist in a form that would be acceptable to it because there are currently no pending executions

18

or any likely to be scheduled in the foreseeable future. *See* Oral Argument at 4:18–30 (observing that all past information it has received is "no longer operative because the certification process will have to restart. And Justice 360 doesn't know what methods of execution will be certified as available at that time, let alone what the specific protocols for those methods will be."); *id.* at 6:43–51 ("Q: You agree [that] until an execution is set, you're never going to get the information and you don't want the information because it's not certified? A: Agreed."); *see also* J.A. 37 (d)–(e) (Amended Complaint seeking a declaration that Justice 360 has a right "to know the details of the lethal injection protocol" and "the [electrocution] execution protocol").

Therefore, granting Justice 360 the relief it seeks in its Amended Complaint would amount to no more than an impermissible advisory opinion, as the organization's alleged injuries would remain unredressed. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("Federal courts may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts." (cleaned up)). As such, we lack authority to consider its claims.

## III.

Accordingly, we vacate the district court's judgment and remand with instructions to dismiss this case for lack of jurisdiction.

*VACATED AND REMANDED WITH INSTRUCTIONS*